**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 24-5195**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JOHN DOE,
*Appellant*,

v.

PUBLIC COMPANY ACCOUNTING OVERSIGHT
BOARD AND UNITED STATES OF AMERICA,
*Appellees*.

Appeal from the United States District Court
for the District of Columbia, No. 1:24-cv-00780

**BRIEF OF APPELLEE PUBLIC COMPANY
ACCOUNTING OVERSIGHT BOARD**

Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Ave. NW
Suite 500
Washington, DC 20037
Telephone: (202) 556-2000
jlamken@mololamken.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Rachel G. Miller-Ziegler
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500 E
Washington, DC 20001
Telephone: (202) 220-1100
Donald.Verrilli@mto.com

*Counsel for Appellee Public Company Accounting Oversight Board*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

The appellant is identified pseudonymously as John Doe. Doe was the plaintiff in the district court.

Appellees are the Public Company Accounting Oversight Board (the "Board") and the United States of America. The Board was named as the defendant in the complaint. The United States intervened as a defendant in the district court.

No amici appeared before the district court.

### B.    Ruling Under Review

This appeal concerns the Honorable James E. Boasberg's August 2, 2024 order denying Doe's motion to proceed under a pseudonym. The order is not published in the Federal Supplement but is available at 2024 WL 3954189.

### C.    Related cases

This case has not previously been before this Court.

Undersigned counsel is unaware of any pending "related" cases. One pending case of which counsel is aware—*John Doe v. Public Company Accounting Oversight Board*, No. 25-cv-186 (ACR) (D.D.C.)—involves the same defendant and similar issues. That case does not involve the same plaintiff, so the case is not "related" as that term is defined in Circuit Rule 28(a)(1)(C).

i

Dated:  February 9, 2026

/s/ Donald B.  Verrilli, Jr.
Donald B. Verrilli, Jr.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rules 26.1 and 28(a)(1)(A), the Board certifies that it is a nonprofit corporation established by Congress to oversee the audit of public companies that are subject to the securities laws and related matters.  The Board has no parent company, and no publicly held company owns 10% or more of the Board's stock.


Dated:  February 9, 2026                    */s/ Donald B.  Verrilli, Jr.*
                                            Donald B. Verrilli, Jr.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ...................................................... iii

TABLE OF CONTENTS.................................................................................... .iv

TABLE OF AUTHORITIES ............................................................................. .vi

GLOSSARY OF ABBREVIATIONS ................................................................ .xi

INTRODUCTION ...............................................................................................1

STATEMENT OF THE ISSUE ...........................................................................3

STATUTES AND REGULATIONS ....................................................................3

STATEMENT OF THE CASE..............................................................................3

     A.    The Public Company Accounting Oversight Board .............................3

     B.    John Doe and His Proceedings Before the Board .................................4

     C.    Doe's Claims for Relief............................................................................4

     D.    Transfer and the Motion to Proceed Pseudonymously ........................5

     E.    Appellate Proceedings.............................................................................9

STANDARD OF REVIEW ................................................................................10

SUMMARY OF ARGUMENT .........................................................................10

ARGUMENT .....................................................................................................13

I.    THIS COURT'S FIVE-FACTOR TEST STRONGLY FAVORS DISCLOSURE...............................................................................................13

     A.    Factor One:  Doe Does Not Seek to "Preserve Privacy in a Matter of a Sensitive and Highly Personal Nature."...........................14

     B.    Factors Two and Three:  Disclosure of Doe's Identity Poses No Risk of Retaliatory Harm and Doe Is an Adult.................................22

     C.    Factor Four:  Doe's Broad Challenge to Federal Statutes Creates a Heightened Public Interest in Disclosure. .........................23

     D.    Factor Five:  Although the Board Is Aware of Doe's Identity, That Alone Does Not Justify Pseudonymity.......................................29

# TABLE OF CONTENTS
## (continued)

**Page**

II.  THE CONFIDENTIALITY OF BOARD PROCEEDINGS DOES NOT WEIGH IN FAVOR OF PSEUDONYMITY IN COURT. ..................30

    A.  Sarbanes-Oxley Eliminates Confidentiality in Suits Like This One. ........................................................................................31

    B.  Doe's Analogies to Other Confidential Proceedings Only Emphasize Why He Should Not Be Permitted to Proceed Under a Pseudonym Here. ......................................................................34

    C.  Doe's Remaining Authorities Do Not Help Him. ............................38

III.  THE DISTRICT COURT PROPERLY DECLINED TO CONSIDER DOE'S ASSERTED LIKELIHOOD OF SUCCESS ON THE MERITS. ..................................................................................................40

CONCLUSION ........................................................................................................43

CERTIFICATE OF COMPLIANCE ......................................................................44

CERTIFICATE OF SERVICE ...............................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Fuel & Petrochemical Mfrs. v. EPA,*
   3 F.4th 373 (D.C. Cir. 2021).................................................................33

*Cobell v. Norton,*
   391 F.3d 251 (D.C. Cir. 2004)..............................................................41

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
   603 U.S. 799 (2024)..............................................................................34

*CTS Corp. v. EPA,*
   759 F.3d 52 (D.C. Cir. 2014).................................................................40

*Digital Realty Tr., Inc. v. Somers,*
   583 U.S. 149 (2018)..............................................................................37

*Doe Corp. 1 v. Inter-Am. Dev. Bank,*
   2025 WL 3485682 (D.C. Cir. Dec. 4, 2025) .......................................22

*Doe v. Bogan,*
   542 F. Supp. 3d 19 (D.D.C. 2021).......................................................18

*Doe v. DOJ,*
   2023 WL 3883939 (D.D.C. June 1, 2023)...............................16, 23, 29

*Doe v. Garland,*
   2021 WL 3622425 (D.D.C. Apr. 28, 2021)..............................18, 19, 29

*\*Doe v. Hill,*
   141 F.4th at 295  ................... 9, 10, 11, 13, 20, 21, 23, 24, 25, 26, 27, 28, 29, 38

*Doe v. MIT,*
   2022 WL 16554725 (D. Mass. Oct. 31, 2022) .....................................39

*Doe v. MIT,*
   46 F.4th 61 (1st Cir. 2022).........................................15, 18, 27, 38, 39

\* Authorities upon which we chiefly rely are marked with asterisks.

vi

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Doe v. Rogers*,
  2023 WL 1470007 (D.D.C. Feb. 2, 2023) ................................................. 18, 19

*Doe v. Rubio*,
  2025 WL 1676007 (D.D.C. June 13, 2025) ..................................................... 23

*Emp. #1 v. Dep't of Behav. Health*,
  694 F. Supp. 3d 110 (D.D.C. 2023) ............................................................... 16

*McBride v. Merrell Dow & Pharms.*,
  800 F.2d 1208 (D.C. Cir. 1986) .................................................................... 40

*McDonald v. Smith*,
  472 U.S. 479 (1985) ...................................................................................... 28

*Metlife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ...................................................................... 40

*In re Motions of Dow Jones & Co.*,
  142 F.3d 496 (D.C. Cir. 1998) ...................................................................... 35

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978) ...................................................................................... 39

*Performance Coal Co. v. Fed. Mine & Health Rev. Comm'n*,
  642 F.3d 234 (D.C. Cir. 2011) ...................................................................... 33

*Plaintiff v. Verizon Commc'ns*,
  2022 WL 168324 (D.D.C. Jan. 19, 2022) ...................................................... 42

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) ...................................................................................... 33

*Roe v. Doe*,
  2019 WL 2058669 (D.D.C. May 7, 2019) ..................................................... 23

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Sealed Case*,
199 F.3d 522 (D.C. Cir. 2000)..................................................................36

*\*In re Sealed Case*,
931 F.3d 92 (D.C. Cir. 2019)....................................6, 10, 16, 19, 22, 38

*\*In re Sealed Case*,
971 F.3d 324 (D.C. Cir. 2020)................... 6, 7, 9, 10, 11, 13, 14, 15, 16, 17, 18,
...................................................... 20, 21, 22, 23, 24, 25, 26, 27, 29, 41

*SEC v. Goldstone*,
301 F.R.D. 593 (D.N.M. 2014).......................................................31, 32

*SEC v. Jarkesy*,
603 U.S. 109 (2024).............................................................................42

*Sponsor v. Mayorkas*,
2023 WL 2598685 (D.D.C. Mar. 22, 2023) ......................................16

*Taxpayers Watchdog, Inc. v. Stanley*,
819 F.2d 294 (D.C. Cir. 1987)...............................................................9

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)...............................................................................32

*United States v. Procter & Gamble Co.*,
356 U.S. 677 (1958).............................................................................36

*United States v. Williams*,
504 U.S. 36 (1992)...............................................................................36

**FEDERAL STATUTES**

15 U.S.C. § 78u-6(h)(2)(A).............................................................34, 37

15 U.S.C. § 7211(a) ...............................................................................3

15 U.S.C. § 7215....................................................................30, 34, 35, 36, 39

15 U.S.C. § 7215(b)(5)(A).........................................8, 30, 31, 32, 33, 37

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15 U.S.C. § 7215(c)(2)...............................................................................8, 32

15 U.S.C. § 7215(d) ......................................................................................33

15 U.S.C. § 7217(c) .......................................................................................33

15 U.S.C. § 7217(c)(2).....................................................................................3

**FEDERAL RULES**

D.D.C. LCrR 6.1 ...........................................................................................35

D.D.C. LCvR 40.7(f) .....................................................................................42

Fed. R. Crim. P. 6(e) ................................................................................34, 35

Fed. R. Crim. P. 6(e)(2)(B) ...........................................................................35

Fed. R. Crim. P. 6(e)(5) .................................................................................35

Fed. R. Crim. P. 6(e)(6) .................................................................................35

**FEDERAL REGULATIONS**

26 C.F.R. § 301.7623-1(e) .............................................................................38

76 Fed. Reg. 34,300 (June 13, 2011) ............................................................37

**LEGISLATIVE MATERIALS**

S. Rep. No. 107-205 (2002) ...........................................................................33

**OTHER AUTHORITIES**

New Civil Liberties Alliance, *NCLA Challenges Modern Star
    Chamber Proceedings at Public Company Accounting Oversight
    Board* (Jan. 19, 2023), https://nclalegal.org/press_release/ncla-
    challenges-modern-star-chamber-proceedings-at-public-company-
    accounting-oversight-board/ .......................................................................28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Eugene Volokh, *The Law of Pseudonymous Litigation*,
    73 Hastings L.J. 1353 (2022)............................................................................19

x

## GLOSSARY OF ABBREVIATIONS

Board          Public Company Accounting Oversight Board

ECF            Electronic Case Filing

PCAOB          Public Company Accounting Oversight Board

SEC            U.S. Securities and Exchange Commission

**INTRODUCTION**

When the Public Company Accounting Oversight Board ("Board") brought disciplinary proceedings against Plaintiff John Doe, Doe responded by suing the Board in federal court. He raised a long list of alleged constitutional defects in the Board's structure and operations, claiming that those defects deprived him and others of fundamental rights. But even as he sought federal-court review, he hoped to avoid the ordinary rule that parties to a federal judicial proceeding must "openly identify themselves." *Doe v. Hill*, 141 F.4th 291, 293 (D.C. Cir. 2025) (citation omitted). He therefore asked the district court to grant him the "rare dispensation" of being allowed to proceed under a pseudonym. *Id.* (citation omitted). Concluding that Doe had failed to meet his "weighty burden" of showing that "his privacy interests outweigh[ed] the public's presumptive and substantial interest in learning his identity," JA__ (Order 2-3), the district court denied the motion.

The district court faithfully applied this Court's five-factor balancing test for pseudonymity motions, concluding (just as the Board had argued) that all but one of those factors cut against Doe's request to proceed under a pseudonym. On appeal, Doe quibbles with the district court's application of that "fact driven" test. *Hill*, 141 F.4th at 293 (citation omitted). But the district court's reasoning—for example, that Doe's desire to protect "his future employment opportunities" was nothing like the kind of "traditionally recognized" privacy interests, "such as sexual activities,

1

reproductive rights, and bodily autonomy," JA__ (Order 3) (citation modified)—was plainly correct and, at the very least, "within the zone of reasonableness" that applies to discretionary decisions like this one, *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018).

The district court was similarly well within its discretion in concluding that the other two "factors" to which Doe points do not change the balance. First, although Doe identifies a statute that provides for confidentiality in Board proceedings, that statute does not require privacy in this federal court lawsuit—indeed, the statute affirmatively authorizes disclosure in such a suit. Second, Doe's insistence that he should be allowed to proceed under a pseudonym because, in his view, he is likely to prevail on the merits of one of his claims is baseless: he not only forfeited that argument, but also fails to offer any rationale for conducting a merits analysis as part of the pseudonymity balancing test.

As this Court recently emphasized, there is a "strong presumption against pseudonymous litigation," and litigants who, like Doe, "seek to alter public law by using the federal courts must, in all but truly exceptional cases, reveal their identity." *Hill*, 141 F.4th at 292, 300. Doe has fallen far short of showing that his is the "truly exceptional case[]." *Id.* The Court should affirm.

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion in concluding that Doe has not overcome the strong presumption of judicial transparency and denying Doe's motion to proceed under a pseudonym.

## STATUTES AND REGULATIONS

Except for the provisions reproduced in the Addendum to this brief, all applicable authorities are contained in the Brief of Plaintiff-Appellant.

## STATEMENT OF THE CASE

### A.    The Public Company Accounting Oversight Board

In the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, Congress established the Board to oversee the audits of public companies that are subject to the securities laws.  15 U.S.C. § 7211(a).  Firms that audit publicly traded companies must register with the Board and comply with certain auditing and other professional standards established by the Board.  *Id.* §§ 7212(a), 7213(a)(1).  To promote compliance, the Board may conduct investigations and institute disciplinary proceedings.  *Id.* §§ 7215(b)(1), (c).

Any sanctions issued by the Board are subject to review by the U.S. Securities and Exchange Commission ("SEC").  15 U.S.C. § 7217(c)(2).  The SEC can cancel or modify any sanction it deems "excessive, oppressive, inadequate, or otherwise

3

not appropriate." *Id.* § 7217(c)(3).  And the SEC's order, in turn, is subject to review in a court of appeals under the Securities Exchange Act.  *Id.* § 78y(a).

## B.      John Doe and His Proceedings Before the Board

Doe alleges that he was previously employed as an auditor at a firm where he was part of a team that performed component audit procedures relating to a publicly traded company.  *See* JA__ (Complaint ¶ 3).  In 2022, the Board informed Doe that he might become the subject of disciplinary proceedings, alleging that Doe had "failed to cooperate with the Board's inspection and investigation" of his firm's role in the 2015 audit of the company.  JA__ (Complaint ¶ 54).  The Board did not suggest, however, that it would initiate proceedings related to the "quality of the underlying audit work" Doe performed.  JA__ (Complaint ¶ 54).  In December 2022, the Board instituted disciplinary proceedings against Doe.  JA__ (Complaint ¶ 57).  Those proceedings are still pending.

## C.      Doe's Claims for Relief

After the Board instituted proceedings, Doe launched a collateral attack.  On January 19, 2023, Doe filed a complaint against the Board in the Northern District of Texas, *see* JA__, together with a motion for leave to litigate this action pseudonymously, *see* ECF No. 3, No. 23-cv-00149 (N.D. Tex. Jan. 19, 2023).

In the Complaint, Doe seeks injunctive and declaratory relief to remedy what he alleges are six constitutional defects in the Board's structure and operations.  In

4

particular, he claims that (1) "the Board's taxing and funding scheme" violates Article I and separation-of-powers principles; (2) the Board and its staff are violating Article II by "exercising core executive law enforcement power against [him] without meaningful direction and supervision by principal officers of the Executive Branch"; (3) the hearing officer overseeing his disciplinary proceedings is an inferior officer who was "not lawfully appointed in accordance with the [Constitution's] Appointments Clause"; (4) the hearing officer "enjoys multiple layers of protection from removal by the President" in violation of Article II; (5) the Board's disciplinary proceedings are procedurally unfair for "accused accountants" in violation of the Due Process Clause of the Fifth Amendment; and (6) the disciplinary proceedings deprive him of "any opportunity to defend himself before a jury" in violation of the Seventh Amendment.  JA__, __, __-__ (Complaint ¶¶ 62, 68, 73, 78, 81-82, 85).

## D.     Transfer and the Motion to Proceed Pseudonymously

The Board moved to dismiss or, in the alternative, to transfer the suit.  On March 13, 2024, the District Court for the Northern District of Texas held that it lacked personal jurisdiction because the dispute—brought by a plaintiff who does not reside in Texas and related to events taking place outside of Texas—had no connection to Texas.  The court accordingly transferred the case to the District of Columbia.  *See* JA__.

Doe filed a renewed motion for leave to litigate under a pseudonym. *See* ECF No. 66 ("Motion").[1]  Doe acknowledged that plaintiffs ordinarily must use their real names when litigating in federal court, but he argued that his case warranted an exception under the balancing test set out in *In re Sealed Case*, 931 F.3d 92 (D.C. Cir. 2019) ("*Sealed Case I*").  The Board opposed the motion, arguing that the balancing test strongly favored public disclosure.  *See* ECF No. 69 ("Board Opposition").

The district court (Boasberg, C.J.) denied the motion, finding that Doe had not "made the detailed showing required to overcome the presumption in favor of disclosure."  JA__ (Order 1).  In so finding, the court began by addressing in detail the five nonexhaustive factors this Court has identified to guide the inquiry, finding that four of the five factors favored public disclosure.  JA__ (Order 2-7).

As to the first factor, which asks whether the matter is "sensitive and highly personal" or whether the requesting party merely wishes to "avoid the annoyance and criticism that may attend any litigation," *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ("*Sealed Case II*") (citation omitted), the district court found that disclosing Doe's identity would not reveal any sensitive or highly personal information, JA__ (Order 3).  The court also found that Doe's argument that

---

[1] Citations to "ECF No." are to the district court docket, No. 24-cv-00780, unless otherwise noted.

publicity might threaten his future employment opportunities—which was supported only by generic statements in Doe's reply brief—was too speculative to tip the factor in Doe's favor.  JA__ (Order 4-5).  And the court rejected Doe's argument that disclosure would discourage future lawsuits against the Board, finding that the argument was "pure speculation" and that Doe's reasoning would "make just about any plaintiff entitled to pseudonym status."  JA__ (Order 5-6) (citation omitted).

As to the second and third factors, which address the risk of retaliation and the age of the requesting party, respectively, Doe conceded that he did not fear retaliation by the Board and that he is an adult.  JA__ (Order 6).  The district court therefore found that those factors did not support use of a pseudonym.  JA__ (Order 6).

As to the fourth factor, which addresses the parties involved, the district court explained that this Court recognizes a "'heightened public interest'" in disclosure of a plaintiff's identity when, as here, "'an individual or entity files a suit against the government.'"  JA__ (Order 7) (quoting *Sealed Case II*, 971 F.3d at 329).  And the public interest in disclosure was particularly strong in this case, the district court found, because Doe's claims were not "grounded in his specific circumstances" but rather designed to alter the "'operation of public law'" for "'other parties going forward.'"  JA__ (Order 6) (quoting *Sealed Case II*, 971 F.3d at 329).

7

As to the fifth factor, which concerns the risk of unfairness to the opposing party, the district court found (as the parties had agreed) that the factor favored Doe because the Board was aware of Doe's identity.  JA__ (Order 7).

The district court then turned to an additional argument Doe had advanced based on the confidentiality of Board proceedings generally.  JA__ (Order 7-10). Doe suggested that because "documents and information" prepared by the Board in investigative proceedings are generally "confidential and privileged as an evidentiary matter" and "exempt from disclosure," 15 U.S.C. § 7215(b)(5)(A), and because hearings before the Board are presumptively nonpublic, *id.* § 7215(c)(2), he should not be required to divulge his name in court.  The court, however, observed that the very provision on which Doe relied states that protected documents and information may be disclosed when "presented in connection with a public proceeding."  15 U.S.C. § 7215(b)(5)(A); *see* JA__ (Order 8-9).  And because Doe's suit was such a proceeding, the court concluded that the statute did not "mandate or even encourage confidentiality" in this case.  JA__ (Order 9).

Finally, the district court dispatched an argument Doe had raised in a footnote to his reply brief, rejecting Doe's "novel suggestion" that his purported "likelihood of success" favored pseudonymity.  JA__ (Order 10).

Because "the first through fourth" factors "tip[ped] the scales toward disclosure," and because Doe offered no other sound basis for maintaining

8

pseudonymity, the district court concluded that Doe had not "met 'the weighty burden' of 'demonstrating a concrete need' for pseudonymity in this lawsuit." JA__ (Order 10) (quoting *Sealed Case II*, 971 F.3d at 326).

### E.　Appellate Proceedings

Doe filed this interlocutory appeal of the order directing him to proceed publicly, together with an unopposed motion to stay that order until this appeal is resolved. *See* ECF Nos. 78, 80. On September 26, 2024, the district court granted the motion to stay by minute order.

The Board filed a motion for summary affirmance, which the Court denied, stating only that the merits were "not so clear as to warrant summary action." Order, *Doe v. PCAOB*, No. 24-5195 (D.C. Cir. Jan. 15, 2025) (citing *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam)). The Court also ordered that the case be held in abeyance and that the parties file motions to govern future proceedings following this Court's resolution of *Doe v. Hill*, No. 24-5049. After that opinion issued, the Board renewed its request for summary affirmance, explaining that *Hill* "strongly bolsters the Board's argument" for affirmance. Motion to Govern Future Proceedings 6, No. 24-5195 (D.C. Cir. July 31, 2025). The Court denied that renewed request, again stating only that the merits were "not so clear as to warrant summary action." *Doe v. PCAOB*, No. 24-5195 (D.C. Cir. Oct. 29, 2025).

## STANDARD OF REVIEW

The Court reviews "'de novo the criteria used by a district court to decide whether to grant a motion to proceed anonymously,'" and it reviews the "'application of those criteria' to the facts of a particular case for an abuse of discretion." *Hill*, 141 F.4th at 295 (quoting *Sealed Case I*, 931 F.3d at 96).

## SUMMARY OF ARGUMENT

"[F]ederal court proceedings are presumptively open and transparent," *Hill*, 141 F.4th at 292, and a litigant who seeks to depart from that presumption and proceed under a pseudonym bears a "weighty burden," *Sealed Case II*, 971 F.3d at 326. A district court confronted with such a request must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *Sealed Case I*, 931 F.3d at 96. This Court has held that "[e]xercise of that discretion is guided by a five-factor balancing test." *Hill*, 141 F.4th at 293.

I. The district court properly applied the five-factor balancing test. The first factor, which considers whether a party is seeking to "preserve privacy in a matter of sensitive and highly personal nature," cuts decidedly against Doe's motion. *Sealed Case I*, 931 F.3d at 97. Doe's assertions that he might suffer career harm if he proceeded under his real name were not only entirely unsubstantiated, but also presented in precisely the "hypothesized" and "conclusory" form that this Court has deemed insufficient to support a pseudonymity request. *Sealed Case II*, 971 F.3d at

10

328. Moreover, Doe's asserted interest in protecting himself from career damage is entirely unlike the sort of "intimate issues" that would "traditionally warrant pseudonymity" under this factor. *Hill*, 141 F.4th at 296 (quoting *Sealed Case II*, 971 F.3d at 327).

Doe concedes that he does not fear retaliation (the second factor) and that he is not a minor (the third factor). His only argument on these factors—that because they are "absen[t]" and not "present," the district court should not have considered them, Opening Br. 27-28—was recently rejected by this Court and is contrary to how district courts in this Circuit routinely apply the balancing test.

The fourth factor—which looks to the identity of the parties as a way of "measuring the public interest in transparent litigation," *Hill*, 141 F.4th at 298—also weighs heavily against Doe's motion. Doe's constitutional challenges to the Board's structure and operation would have "far-reaching consequences" that create an intense "public interest in understanding the genesis and generator of the litigation." *Id.* at 299. Accordingly, the public's interest in knowing Doe's identity is at its "apex." *Id*.

The fifth factor—the risk of unfairness to the Board—supports Doe's motion because the Board is aware of Doe's identity. But this Court's precedent makes clear that a pseudonymity motion should be denied where, as here, only that factor cuts in the movant's favor.

II.   The district court also correctly rejected Doe's argument that statutory provisions making Board proceedings presumptively confidential mean that he should be permitted to proceed under a pseudonym in this federal court challenge to those proceedings.  The provisions Doe identifies are express that confidentiality is lost in a "public proceeding"—which this federal court lawsuit plainly is.  Unable to prevail under the statutory text, Doe ignores it, never once quoting—and certainly not analyzing—that text.  Instead, Doe's core argument is that because litigants bringing suits arising from certain other confidential proceedings are allowed to proceed under a pseudonym, he should be allowed to do the same.  Doe's attempted analogies fall flat, however, because he fails to engage with the critical differences between those other proceedings and the ones conducted by the Board.

III.   Finally, Doe fails to show any error in the district court's refusal to weigh his asserted likelihood of success on his Seventh Amendment claim in assessing Doe's pseudonymity motion.  Doe forfeited the argument by not raising it until his reply brief below and, even then, pressing the argument only in a footnote.  Even if considered, the argument fails:  Doe has no authority adopting his approach, nor does he explain why his chances of success should affect the pseudonymity analysis or grapple with the obvious practical obstacles to conducting that analysis at the very outset of a case.

**ARGUMENT**

"The presumption of openness in judicial proceedings is a bedrock principle of our judicial system"—one that is "both customary and constitutionally-embedded." *Sealed Case II*, 971 F.3d at 325-26 (citation omitted); *see Hill*, 141 F.4th at 300 ("[S]ecrecy in court proceedings was one of the evils of concern at the Founding."). And from that presumption flows another: to "protect the public's legitimate interest in knowing all of the facts involved," parties to a lawsuit must "openly identify themselves." *Hill*, 141 F.4th at 293 (citation modified).

The district court did not abuse its discretion in holding that Doe failed to overcome that latter presumption. Four of the five factors this Court typically considers in evaluating pseudonymity requests weigh decidedly against pseudonymity. And the two additional "factors" Doe identifies—statutory provisions related to the confidentiality of Board proceedings, and his asserted likelihood of success on the merits of one claim—do not change the analysis. Doe misreads the relevant statute, and he offers no support for enmeshing the district court in a merits analysis on a pseudonymity motion. The Court should affirm.

## I. THIS COURT'S FIVE-FACTOR TEST STRONGLY FAVORS DISCLOSURE.

Under this Court's precedent, a district court's discretionary decision to grant or deny or a pseudonymity motion turns primarily on five factors: "[1] whether the justification asserted by the requesting party is merely to avoid the annoyance and

criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Sealed Case II*, 971 F.3d at 326-27 (citation omitted).  Those factors weigh heavily in favor of public disclosure of Doe's identity here.

### A.    Factor One:  Doe Does Not Seek to "Preserve Privacy in a Matter of a Sensitive and Highly Personal Nature."

1.  The district court correctly held that Doe does not seek to preserve privacy in a matter of a "sensitive and highly personal" nature, which weighs strongly against allowing Doe to proceed pseudonymously.  *Sealed Case II*, 971 F.3d at 327; *see* JA__ (Order 3).  A plaintiff generally has such a privacy interest as to information pertaining to "sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors," *id.*—none of which is at issue here. Instead, Doe argues that the first factor supports him because of the professional harm he might face if his identity were disclosed.  *See* Opening Br. 28.  But that argument fails several times over.

14

a.  To start, despite his "weighty burden," Doe offered the district court almost nothing to substantiate his claimed need for privacy.  *Sealed Case II*, 971 F.3d at 326.  In his motion seeking leave to proceed under a pseudonym, Doe asserted only that if his "identity were revealed he would risk losing employment opportunities and the ability to pursue his chosen profession before resolution of the [Board's] action against him."  Motion 4.  He submitted no declaration or other evidence to support even that hedged proposition.  And his reply brief offered little more, citing only a statement from the head of a professional organization that "publication of unproven charges may end an individual auditor's career," along with an unattributed statement in a Reuters news article that when the Board "publicly pursues unproven charges, it may end careers."  ECF No. 74 ("Reply"), at 5-6 (citations omitted).

Those assertions fail to demonstrate the required "concrete need for such secrecy."  *Sealed Case II*, 971 F.3d at 326.  First, Doe failed to provide any admissible evidence to support his claimed privacy interest.  As the First Circuit has explained, "[i]n most cases, the district court should require a declaration or affidavit either by the moving party or by someone with special knowledge who can speak to the need for anonymity in that case."  *Doe v. MIT*, 46 F.4th 61, 73 (1st Cir. 2022).  Consistent with that approach, plaintiffs in this Circuit routinely file declarations or affidavits in support of motions to proceed pseudonymously.  *See, e.g.*, *Sealed Case*

15

*II*, 971 F.3d at 327-28; *Sealed Case I*, 931 F.3d at 94; *Emp. #1 v. Dep't of Behav. Health*, 694 F. Supp. 3d 110, 114 (D.D.C. 2023); *Doe v. DOJ*, 2023 WL 3883939, at *2 (D.D.C. June 1, 2023); *Sponsor v. Mayorkas*, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023). Doe, by contrast, provided *no* evidentiary support for his motion. That Doe did not (or could not) support his application with sworn testimony or other competent evidence is reason enough to conclude that he did not meet his burden.

Second, Doe's unsupported assertions are fatally thin. In *Sealed Case II*, the Court explained that the petitioner had "not even made a colorable showing of injury to a privacy interest" where it identified only "hypothesized harms" that were also "presented in entirely conclusory form, devoid of factual corroboration or elucidation." *Sealed Case II*, 971 F.3d at 327-28. The same is true of Doe's allegations about potential reputational risk. As the district court found, Doe never "specifically explain[ed] why harm was likely to result," instead saying only that he *could* suffer career harm. JA__ (Order 5). Doe, like the *Sealed Case II* plaintiff, made "no showing of a substantial risk of privacy injury that *would* occur." *Sealed Case II*, 971 F.3d at 327. Moreover, Doe's assertion in his pseudonymity motion that "he would risk losing employment opportunities" if his identity were revealed, Motion 4, is "entirely conclusory" and "devoid of factual corroboration or elucidation," *Sealed Case II*, 971 F.3d at 328. As was true in *Sealed Case II*, Doe's "conclusory and unexplained claims that [his] identity is a sensitive or personal

16

matter provide far too frail a basis on which to confer the rare dispensation of pseudonymous status." *Id.*

In his opening brief's discussion of the first factor, Doe makes two additional points—neither of which substantiates his claim. First, Doe asserts that disclosure would "brand him" as "'damaged goods'" given the Board's broad "regulatory reach" and the fact that the Board has "issued fewer than 550 final disciplinary orders . . . and fewer than 30 of those orders resulted from adjudicated (*i.e.*, non-settled) disciplinary proceedings." Opening Br. 32-33. To the extent Doe attempts to use those numbers to substantiate his asserted reputational harm, he does not develop that argument, nor did he make any such argument below[2]—meaning the district court could not possibly have abused its discretion in not relying on it. Second, Doe notes that "no lawsuits have similarly challenged the constitutionality of a pending Board disciplinary proceeding without an accompanying request for pseudonymity." Opening Br. 33. Doe fails to mention, however, that *all* of those lawsuits were filed following Doe's suit and some of the same counsel represented each of the Doe plaintiffs. Complaint, 23-cv-00149 (N.D. Tex. Jan. 19, 2023); Complaint, 24-cv-00254 (M.D. Tenn. Mar. 5, 2024); Complaint, 24-cv-01103 (S.D. Tex. Mar. 27, 2024); Complaint, 25-cv-00070 (D.D.C. Jan. 10, 2025); ECF Nos. 23

---

[2] Doe noted the number of Board proceedings in his motion only in arguing that "persever[ing] through" Board proceedings "is largely illusory." Motion 8.

& 24, 25-cv-00070 (D.D.C. Mar. 18, 2025).  That Doe's counsel has employed the same litigation strategy across cases hardly substantiates his asserted need for pseudonymity.

b.  Even if Doe had supported his claimed privacy interest, Doe's asserted interest in protecting his career prospects "bear[s] no resemblance" to the "intimate or sensitive personal information" that would support pseudonymity.  *Sealed Case II*, 971 F.3d at 327.  As several district court decisions have recognized, a "plaintiff's concerns about potential career harm are more akin to 'annoyance and criticism that may attend any litigation,'" and thus do not satisfy the first factor.  *Doe v. Rogers*, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (citation omitted); *Doe v. Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021) (same).  Courts in this Circuit regularly find that the first factor weighs against pseudonymity in cases involving disclosures that would have far more obvious and striking professional implications than here.  *See, e.g.*, *Rogers*, 2023 WL 1470007, at *2 (addressing plaintiff cardiac surgeon's inclusion on a database of medical misconduct reports); *Bogan*, 542 F. Supp. 3d at 23 (addressing plaintiff law professor's use of a racial slur); *Doe v. Garland*, 2021 WL 3622425, at *1-2 (D.D.C. Apr. 28, 2021) (addressing plaintiff AUSA's prior discipline by Department of Justice).  Those cases reflect the simple fact that "[l]awsuits in federal courts frequently invade customary notions of privacy and—in the bargain—threaten parties' reputations."  *MIT*, 46 F.4th at 70.  If, as Doe

suggests, "risk of reputational damage sufficed to justify pseudonymity, our civil system would become, for better or worse, one in which pseudonymity is the norm." Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1420 (2022).

What is more, the interest Doe asserts here is particularly weak even as compared to interests deemed insufficient in other cases.  Courts often have found that the first factor favors disclosure even where the information the plaintiff seeks to keep private is at the center of the case—and thus will feature prominently in any subsequent discovery or judicial determination.  *See Rogers*, 2023 WL 1470007, at *2; *Garland*, 2021 WL 3622425, at *1.  Here, however, adjudicating Doe's claims will implicate only the *Board's* conduct and structure and thus poses no risk of amplifying any asserted harms to Doe.  Moreover, the complaint acknowledges that the Board has not "questioned the quality of [Doe's] underlying audit work."  JA\_\_ (Complaint ¶ 54).  Doe has never explained why or how public revelation that the Board has brought as-yet-unadjudicated charges that he "failed to cooperate" with a Board investigation would damage his professional prospects as an auditor.  JA\_\_ (Complaint ¶ 54).  At bottom, Doe's theory of harm reduces to a request that the courts insulate him from the kind of "criticism that may attend any litigation." *Sealed Case I*, 931 F.3d at 97.

2. Instead of substantiating any legitimate privacy interest, Doe's arguments on this factor largely rest on picking out ways in which his case is different from *Sealed Case II* and *Hill*.  *See* Opening Br. 29-33.  In both of those cases, this Court affirmed the *denial* of a request to proceed under a pseudonym in light of particular facts.  *See Sealed Case II*, 971 F.3d at 330; *Hill*, 142 F.4th at 300.  But those cases do not, of course, stand for the proposition that such a denial is appropriate only in the exact same factual settings—that is, only as to "convicted felon[s] seeking . . . government job[s]" or companies seeking "small-business hardship exemption[s]" with "joint protective order[s]" in place.  Opening Br. 29, 31.  Various factual differences between Doe's case and others where plaintiffs were *not* permitted to proceed publicly do little to show that Doe *should* be allowed to do so—particularly given that Doe bears the "weighty burden" to show that pseudonym status is appropriate *and* must demonstrate that the district court abused its discretion.  *Sealed Case II*, 971 F.3d at 326; *see Hill*, 141 F.4th at 295.

Far from helping Doe, *Sealed Case II* and *Hill* highlight his failure to make the required showing of a concrete privacy interest.  *Sealed Case II* deemed inadequate allegations that were, if anything, better supported than Doe's.  *See Sealed Case II*, 971 F.3d at 327; *see also id.* (citing movant's supporting declaration); pp. 16-17, *supra*.  As was true in *Sealed Case II*, Doe's "hypothesized harms . . . presented in entirely conclusory form" provide an insufficient basis for

20

granting "the rare dispensation of pseudonymous status." *Sealed Case II*, 971 F.3d at 327-28.

And in *Hill*, this Court held that even though the plaintiff had "some legitimate privacy interest" in his decades-old sealed felony conviction, he had "not shown that his interest in confidentiality qualifies as the type of compelling, sensitive, and highly personal privacy interest that would tilt the first factor in his favor." *Hill*, 141 F.4th at 298. That was so not only because his conviction was previously public, *see id.* at 295-97, but *also* because he had failed to identify any authority suggesting that a plaintiff's privacy interest in a conviction trumps the "public's historic and presumptive right to monitor whether federal courts are doing justice between parties, and how parties are using the courts to vindicate their own interests," *id.* at 297. The same is true here *a fortiori*: Doe's interest in reputational harm from mere *allegations* being made public (as distinct from a prior liability finding like the conviction in *Hill*) does not trump the public's right to transparent judicial proceedings, particularly where Doe has done nothing to substantiate that alleged harm. The better view is that neither the *Hill* plaintiff's privacy interest in sealed criminal convictions, nor Doe's privacy interest in confidential civil disciplinary proceedings, suffices to justify pseudonymity.

**B.** **Factors Two and Three:  Disclosure of Doe's Identity Poses No Risk of Retaliatory Harm and Doe Is an Adult.**

As the district court held, the second and third factors also cut against Doe's bid for pseudonymity.  The second factor asks whether disclosure would create a risk of retaliation, and the third factor asks whether the requesting party is particularly vulnerable due to his or her age.  *See Sealed Case I*, 931 F.3d at 97.  As Doe concedes, he does not fear retaliation and he is not a minor.  Opening Br. 27.

Doe insists, however, that because these factors do not support him, they are "inapplicab[le]" and that the district court accordingly erred in giving them any weight in its interest balancing.  Opening Br. 28.  On Doe's telling, "the *presence* of those factors" can support a request for pseudonymity, but "their absence adds no weight to either side of the scale because they are not 'relevant.'"  *Id.* (quoting *Sealed Case I*, 931 F.3d at 97).  That is wrong.  As this Court recently explained, such an approach—where "only those factors that support a party's request [to proceed under a pseudonym] should be considered"—"find[s] no support in this court's case law and run[s] contrary to the principle that permission to litigate under a pseudonym is a 'rare dispensation' that requires litigants to meet a correspondingly 'weighty burden.'"  *Doe Corp. 1 v. Inter-Am. Dev. Bank*, 2025 WL 3485682, at *1 (D.C. Cir. Dec. 4, 2025) (quoting *Sealed Case II*, 971 F.3d at 326).  And district courts routinely view factors two and three as cutting against pseudonymity requests where movants, like Doe, cannot show any fear of retaliation or establish that their age makes them

22

particularly vulnerable to proceeding publicly.  *See, e.g.*, *Doe v. Rubio*, 2025 WL 1676007, at *3 (D.D.C. June 13, 2025); *Doe v. DOJ*, 2023 WL 3883939, at *3 (D.D.C. June 1, 2023), *aff'd*, 2023 WL 7268249 (D.C. Cir. Oct. 31, 2023); *Roe v. Doe*, 2019 WL 2058669, at *3-4 (D.D.C. May 7, 2019).  Doe fails to show that the district court abused its discretion by weighing those factors in deciding his motion.[3]

### C.    Factor Four:  Doe's Broad Challenge to Federal Statutes Creates a Heightened Public Interest in Disclosure.

The fourth factor also weighs sharply against allowing Doe to proceed under a pseudonym because his suit challenges a federal governmental body as structurally unconstitutional.[4]  This factor asks "'whether the action is against a governmental or private party'" as "a tool for measuring the public interest in transparent litigation."  *Hill*, 141 F.4th at 298 (citation omitted).  As this Court has explained, "[t]hat public interest is intensified when . . . the party asking to proceed anonymously seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward."  *Sealed Case II*, 971 F.3d at 329.  Such a suit has "far-reaching consequences" and, accordingly,

---

[3] Indeed, if Doe were correct that those factors are irrelevant because they are not "presen[t]," then factor five—the only factor that supports Doe's motion—also would be irrelevant because any unfairness from allowing Doe to proceed anonymously is also "absen[t]."  Opening Br. 28 (emphasis omitted).

[4] The parties agree that the Board is part of the government for constitutional purposes, including for purposes of considering the pseudonymity motion.  *See* Opening Br. 34; Board Opposition 9.

"the public interest in understanding the genesis and generator of the litigation is great." *Hill*, 141 F.4th at 299.

That precisely describes this case. Doe of course hopes to "alter the operation of public law . . . as applied to" him. *Sealed Case II*, 971 F.3d at 329. He seeks a declaratory judgment "that the Board's disciplinary proceedings against [him] are unlawful and unconstitutional" and requests that the Court enjoin the Board's proceedings against him on that basis. JA__ (Complaint 30, Relief Requested ¶¶ (i)-(ii)). But, as Doe concedes, *e.g.*, JA__ (Order 6) (quoting Motion 10), he raises claims that do not turn on any fact particular to him, his conduct, or the Board's actions specific to him: for instance, he contends that the Board's funding is unconstitutional and that its hearing officers are not lawfully appointed. *See* p. 5, *supra*. Those "legal arguments" could, accordingly, "alter the operation of public law . . . to other parties going forward" should Doe prevail. *Sealed Case II*, 971 F.3d at 329. And such a "far-reaching" constitutional challenge places this case "at the apex of public interest in litigation." *Hill*, 141 F.4th at 299.

Doe's arguments to the contrary are unavailing. First, he attempts to portray his case as seeking only "modest, individualized, and self-protective relief." Opening Br. 36. That is wrong. The thrust of his complaint is that the Board is unconstitutional in all of its operations, regardless of what exactly it is doing. *See, e.g.*, JA__ (Complaint 7) (Doe alleging that the Board operates under an

24

"unconstitutional taxation, funding, and spending scheme") (capitalization altered). For example, Doe's argument that "the Board is violating . . . Article I of the Constitution and the constitutional separation of powers" because its funding comes from improperly levied taxes, JA__ (Complaint 24-25), is in no way "individualized" to him, Opening Br. 36. To the contrary, that contention about the Board's funding scheme (like all of Doe's claims) applies "across the board" to any litigant challenging the Board's constitutionality, *Hill*, 141 F.4th at 299. And at every opportunity—until now, when it no longer suits him—Doe has emphasized the ambitious stakes of this lawsuit. *See, e.g.*, ECF No. 57, at 2, 11-12 (Doe opposing dismissal on the ground that his suit "challenge[s] the structural constitutionality" of the Board); ECF No. 98, at 13 (Doe asserting that "[t]his case, together with the other [since-consolidated] cases, raises significant constitutional questions about the expansive powers of the Board").

That Doe did not expressly frame his sweeping claims as facial constitutional challenges does not change the analysis. Doe clings to the fact that he, unlike the plaintiff in *Hill*, "is *not* asking the court to strike down any federal statute as facially unconstitutional" and is instead asking for relief only for himself. Opening Br. 36. He ignores, however, that the same was true of the petitioner in *Sealed Case II*, yet this Court "rejected pseudonymity because [the petitioner's] arguments would clearly apply beyond its case." JA__ (Order 7); *see Sealed Case II*, 971 F.3d at 325.

The issue is not the formalities of a complaint, but instead its consequences—if successful—for the public. *See Hill*, 141 F.4th at 298. And because Doe challenges the very operation and funding of the Board, those consequences are significant: as the district court explained, Doe's "challenge is not grounded in his specific circumstances or limited to individualized relief." JA__ (Order 6).[5]

Second, Doe says that there can be no "conceivable public interest" in his name because "[n]either the district court nor the Board has articulated any reason why revealing Doe's true name would enhance the public's ability to understand this case or to assess whether justice is being done." Opening Br. 38. But that framing inverts the proper analysis, which places a "weighty burden" on the party seeking to proceed under a pseudonym to justify that departure from ordinary practice—not on the court evaluating the request or the party opposing it. *Sealed Case II*, 971 F.3d at 326; *see also Hill*, 141 F.4th at 300 (recognizing that "in all but truly exceptional cases" litigants must "reveal their identity").

Under the proper analysis, this factor cuts strongly against Doe. As this Court recently emphasized, "[r]equiring parties to litigate under their real names serves important values." *Hill*, 141 F.4th at 293. Knowing Doe's identity would allow the

---

[5] Although Doe also seeks to distinguish *Hill* on the basis that the plaintiff there sought damages, Opening Br. 36, he concedes that the damages request played no role in this Court's analysis, *id.* at 35 n.10 ("this Court's opinion did not mention" request for damages).

public to evaluate "the interests at stake" and "assess 'the real-world aftermath of [his] suit,'" *id.* (quoting *MIT*, 46 F.4th at 68)—with Doe's name in hand, the public would see who the Board has brought proceedings against, and understand more about what it would mean for the Board to be unable to pursue such enforcement should it be declared unconstitutional. Doe proceeding publicly also would "promote[] the appearance of fairness" and "make[] it easier for citizens to investigate abuses of the judicial process." *Id.*; *see id.* (noting that "[s]ecrecy breeds suspicion" (quoting *MIT*, 46 F.4th at 69)). And all of those interests are, again, "intensified" here given that Doe's legal arguments would apply equally "to other parties going forward." *Sealed Case II*, 971 F.3d at 329.

Revealingly, Doe faults the district court for considering "the public's interest in the overall case," saying that "the relevant balance should focus only" on "whether the public would care about Doe's actual name." Opening Br. 38-39 n.12. But the district court got it exactly right. The point of the fourth factor is to assess how the nature of the suit affects "the extent of the public interest in transparent litigation." *Hill*, 141 F.4th at 298. The more a case matters beyond the parties before the court, the greater the public's interest in knowing its details. *See, e.g.*, *id.* at 299 ("Given the far-reaching consequences of the relief Dr. Doe seeks, the public interest in understanding the genesis and generator of the litigation is great."). Here, Doe's suit attacks an entity that Congress created to protect the public from economy-

27

threatening, Enron-type scandals; there is an obvious and significant public interest in knowing the name behind that suit.[6]  In short, although Doe dismisses this "public curiosity" as "trivial," Opening Br. 15, his argument, like the arguments in favor of pseudonymity in *Hill*, "fails to accord any meaningful weight to the public interest and its *presumptive right* to transparent judicial proceedings in cases of far-reaching public consequence."  *Hill*, 141 F.4th at 300.

Finally, Doe argues that the fact that he is exercising his First Amendment right "to petition the Government for a redress of grievances" provides a "compelling reason" to allow him to proceed under a pseudonym that, he says, was absent in *Hill*.  Opening Br. 39.  But "filing a complaint in court is a form of petitioning activity." *McDonald v. Smith*, 472 U.S. 479, 484 (1985).  *Every* plaintiff seeking to proceed under a pseudonym is exercising a right guaranteed by the First Amendment; that is obviously not a reason to grant pseudonym status.  To the extent that Doe intends to argue that a suit against the government heightens the Petition Clause right, he ignores that the plaintiff in *Hill* was exercising that same right in

---

[6] Indeed, Doe's counsel sought to ignite public interest in Doe's constitutional challenges to the Board by trumpeting Doe's complaint in a press release issued the same day that Doe filed suit.  New Civil Liberties Alliance, *NCLA Challenges Modern Star Chamber Proceedings at Public Company Accounting Oversight Board* (Jan. 19, 2023), https://nclalegal.org/press_release/ncla-challenges-modern-star-chamber-proceedings-at-public-company-accounting-oversight-board/.

challenging the constitutionality of a federal agency's rule.  *See Hill*, 141 F.4th at 292.  And the *Hill* court considered—and rejected—the argument, which Doe echoes, that denying pseudonym status in such cases "will chill litigants from suing the government for constitutional violations."  *Id.* at 300; *see* Opening Br. 41 (raising chilling concerns); JA__ (Order 5-6) (rejecting Doe's chilling concerns as "pure speculation" and noting that his reasoning would "make just about any plaintiff entitled to pseudonym status" (citation omitted)).

### D.    Factor Five:  Although the Board Is Aware of Doe's Identity, That Alone Does Not Justify Pseudonymity.

The Board has always agreed that the fifth factor supports Doe's motion. JA__ (Order 7).  But this Court has made clear that the fifth factor alone cannot tip the scales in favor of anonymity.  *See Sealed Case II*, 971 F.3d at 326-29 & n.1 (denying pseudonym status where defendants knew the plaintiff's identity but all other factors weighed in favor of disclosure).  And the lower courts have followed suit, denying pseudonym status even where a defendant knows the plaintiff's identity.  *See, e.g.*, *Doe v. DOJ*, 2023 WL 3883939, at *3-4; *Garland*, 2021 WL 3622425, at *3.  The fifth factor cannot rescue Doe's request to prosecute this case under a pseudonym where the other four factors all weigh against him.

## II.     THE CONFIDENTIALITY OF BOARD PROCEEDINGS DOES NOT WEIGH IN FAVOR OF PSEUDONYMITY IN COURT.

Perhaps recognizing that this Court's five-factor test weighs strongly in favor of disclosure, Doe places considerable emphasis on "the statutorily mandated secrecy of *Board proceedings*," citing—but conspicuously never quoting—three subsections of 15 U.S.C. § 7215.  Opening Br. 22 (emphasis added).  Doe's suit, though, is not a Board proceeding.  Accordingly, even Doe does not argue that Section 7215, by its terms, *requires* that he remain pseudonymous in the federal suit that he brought.  Instead, his argument is that the statutory confidentiality for Board proceedings is a "factor" to be "weigh[ed]" in deciding his motion.  Opening Br. 21; Reply 4 (Doe describing the provisions as a "factor" favoring pseudonymity).

That argument is meritless.  Section 7215 expressly allows for disclosure in "public proceeding[s]," 15 U.S.C. § 7215(b)(5)(A), which a federal-court lawsuit plainly is.  And the crux of Doe's theory—that judicial challenges arising from certain other proceedings made confidential by statute are often litigated under a pseudonym so his should be too—is based on the faulty premise that those other proceedings are analogous to Board proceedings.  They are not, with critical differences both in the text of the relevant statutes and in the reasons those other proceedings need to be confidential.

30

**A.      Sarbanes-Oxley Eliminates Confidentiality in Suits Like This One.**

Section 7215(b)(5)(A) affirmatively *authorizes* disclosure in federal-court litigation.   That section provides that Board documents, information, and deliberations are confidential "unless and until presented in connection with a public proceeding or released in accordance with subsection (c)."   15 U.S.C. § 7215(b)(5)(A).   As the district court explained, the "plain meaning" of "public proceeding" includes federal judicial proceedings like Doe's lawsuit.  JA__ (Order 9); *see SEC v. Goldstone*, 301 F.R.D. 593, 671-72 (D.N.M. 2014) ("Earlier in subsection (b)(5)(A), the statute refers to 'any proceeding in any Federal or State court or administrative agency,' and it is at these proceedings where the [Board] documents and information may be 'presented in connection with a public proceeding.'" (quoting 15 U.S.C. § 7215(b)(5)(A))).

Resisting that commonsense reading, Doe seeks to rewrite the statute, insisting that "public proceeding" means "public enforcement proceeding[]," which he defines as "one in which the respondent consents to a public hearing, settles the proceeding with a final Board sanction, or appeals an adverse final Board decision to the SEC."  Opening Br. 20.  His argument in this regard does not even quote— much less analyze—the statutory text.   Most critically, his brief never once acknowledges that the provision at issue allows disclosure when "presented in connection with a public proceeding *or released in accordance with subsection (c)*."

31

15 U.S.C. § 7215(b)(5)(A) (emphasis added). Subsection (c), in turn, is the provision that allows the Board to make hearings public with a respondent's consent. 15 U.S.C. § 7215(c)(2); *see* Opening Br. 16. As the district court recognized (in analysis Doe simply ignores), Doe's reading of "public proceeding" as encompassing "one in which the respondent consents to a public hearing" would thus render the second half of subsection (b)(5)(A) superfluous. Opening Br. 20; *see* Order 9; *Goldstone*, 301 F.R.D. at 671 ("the disjunctive 'or' demonstrates that public proceedings are different from the disciplinary procedures in subsection (c)"); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'" (citation omitted)).

To the extent Doe would seek to cure that superfluity problem by narrowing his reading of "public proceeding" to refer only to matters where the Board has issued a final sanction and to appellate proceedings before the SEC, that further gerrymandered reading would still run afoul of the statutory text. Congress would not have used the expansive phrase "public proceeding" to refer only to those two particular situations—especially because those situations are addressed in nearby provisions that Congress easily could have cross-referenced, as it did with subsection

32

(c).  *See* 15 U.S.C. § 7215(d) (final sanctions); 15 U.S.C. § 7217(c) (SEC appellate proceedings).

Doe's *only* support for his reading of "public proceeding" is a snippet of a Senate Report that states that Board documents are "generally" confidential "until made public in connection with a particular public enforcement proceeding."  S. Rep. No. 107-205, at 58 (2002).  Notably, the language on which Doe focuses in the Senate Report is absent from the statutory text.  *Compare* Opening Br. 20 ("*public enforcement proceeding*"), *with* 15 U.S.C. § 7215(b)(5)(A) ("public proceeding").  As is well settled, legislative history cannot "defeat application of a statute's plain meaning."  *Performance Coal Co. v. Fed. Mine & Health Rev. Comm'n*, 642 F.3d 234, 238 (D.C. Cir. 2011); *see*, *e.g.*, *Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 383 (D.C. Cir. 2021) ("The legislative history is silent on why Congress rejected each House formulation and instead adopted the Senate version.  This ambiguous history hardly suffices to overcome the plain text, for courts 'do not resort to legislative history to cloud a statutory text that is clear.'" (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994))).  Federal-court proceedings are quintessential public proceedings, and the Court should reject Doe's effort to evade the statute's plain text.

33

**B.    Doe's Analogies to Other Confidential Proceedings Only Emphasize Why He Should Not Be Permitted to Proceed Under a Pseudonym Here.**

Instead of engaging with the statutory text, Doe seeks to analogize it to Federal Rule of Criminal Procedure Rule 6(e), which addresses secrecy surrounding grand jury proceedings, and to a provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(2)(A), that generally provides for the confidentiality of information that would reveal the identity of certain SEC whistleblowers. Opening Br. 22-25. On Doe's telling, "[i]n Sarbanes-Oxley, Congress made the purposeful legislative and policy choice to impose comparable secrecy in Board proceedings." *Id.* at 22; *see id.* at 23 ("Congress made a similar secrecy choice several years later in [Dodd-Frank]."). But in discerning Congress's "legislative and policy choice[s]," *id.* at 22, the best place to look is the enacted text. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text." (citation omitted)). The provisions on which Doe relies differ substantially from the Sarbanes-Oxley provisions relating to the Board, pointing up why Doe is not entitled to pseudonymity here.

1. Rule 6(e) does not help Doe. Rule 6(e)'s text, unlike Section 7215, requires continued secrecy in judicial proceedings. And that continued secrecy is essential to the very functioning of the grand jury.

34

The operative provisions of Rule 6(e) are nothing like those in Section 7215. The Rule bars most participants from "disclos[ing] a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B); *see In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998) (explaining that Rule bars disclosing "not only what has occurred and what is occurring, but also what is likely to occur"). It goes on to require that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury," and similarly mandates that courts "close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(5)-(6); *see also* D.D.C. LCrR 6.1 (filings relating to grand jury proceedings "shall be filed under seal"). The Rule thus expressly contemplates "ancillary judicial proceedings," *Dow Jones & Co.*, 142 F.3d at 500, and mandates that they preserve the confidentiality of grand jury proceedings. Doe cannot identify any provision of Sarbanes-Oxley that dictates that ancillary judicial proceedings preserve the confidentiality of everything occurring before the Board—indeed, as discussed, Sarbanes-Oxley expressly *authorizes* disclosure in public suits. *See* pp. 31-33, *supra*.

Rule 6(e)'s text implements the Rule's aims. Rule 6(e) "preserve[s]" the "secrecy of grand jury proceedings." *Dow Jones & Co.*, 142 F.3d at 499. As this Court has explained, "the grand jury context is unique," meaning that its "processes

35

are not amenable to the practices and procedures employed in connection with other judicial proceedings." *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000). In particular, "[t]he theory 'of [the grand jury's] function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people.'" *Id.* (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)). And, as this Court has held, "[t]hat function depends on 'maintain[ing] the secrecy of the grand jury proceedings in the federal courts.'" *Id.* (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). Although Doe argues that pseudonymity will protect his reputation and career prospects, Doe does not—and could not—make any argument that shielding his name in this suit is somehow essential to the operation of the Board.

2. The Dodd-Frank provision Doe identifies is, if anything, even less helpful for him. That provision is irrelevant for multiple reasons: The statutory text is markedly different from Section 7215, and a whistleblower program's aims could be frustrated by public judicial proceedings in a way that is not true of the Board's work.

The text of the Dodd-Frank provision on which Doe relies confirms that Congress well knows how to put in place confidentiality requirements that extend to judicial proceedings brought by an individual—but chose not to do so here. The provision Doe cites provides for confidentiality for SEC whistleblower information

36

"unless and until" the information is "*required* to be disclosed to a defendant or respondent in connection with a public proceeding *instituted by the Commission*" or a criminal investigation. 15 U.S.C. § 78u-6(h)(2)(A) (emphasis added). The key provision in Sarbanes-Oxley is not similarly dependent on information being "required" to be presented, nor does it depend on who institutes the public proceeding; rather, it makes clear that Doe's identity remains confidential "unless and until presented in connection with a public proceeding," with no conditions. 15 U.S.C. § 7215(b)(5)(A). As the district court correctly held, such a "public proceeding" undoubtedly includes a court proceeding, like this one, that Doe chose to bring. JA__ (Order 9).

Moreover, Dodd-Frank's whistleblower program is "designed to motivate people who know of securities law violations to tell the SEC," *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155 (2018)—a goal that would be seriously thwarted if whistleblowers had to make their identities public. *See* Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300, 34,326 n.228 (June 13, 2011). As in the grand jury context, continued confidentiality of whistleblowers in judicial proceedings does not simply protect the reputations of individual litigants; it also ensures that future whistleblowers continue to come forward and the system continues to function. To the extent Doe's argument is that anonymity would serve the more abstract policy goal of promoting constitutional challenges to governmental

37

action, *Hill* says the opposite. *See* 141 F.4th at 299 ("Given the far-reaching consequences of the relief . . . Doe seeks, the public interest in understanding the genesis and generator of the litigation is great.").

## C.    Doe's Remaining Authorities Do Not Help Him.

Doe finally points to two cases that he labels "instructive," but they do nothing to advance his position. Opening Br. 21, 25. First, although *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), suggested in dicta that pseudonymity might be warranted in suits "bound up with a prior proceeding made confidential by law," *id.* at 71, this Court's precedent requires applying the ordinary five-factor test in such situations, *see Sealed Case I*, 931 F.3d at 97 (endorsing application of five-factor test in IRS whistleblower suit); 26 C.F.R. § 301.7623-1(e) (providing for confidentiality for IRS whistleblowers). As explained, that test weighs strongly against Doe here—and, at the least, the district court did not abuse its discretion in so holding. *See* pp. 13-29, *supra*. In any event, the First Circuit emphasized that district courts generally "should require" what Doe failed to produce here: a "declaration or affidavit" that "speak[s] to the need for anonymity in that case." *MIT*, 46 F.4th at 73.[7]

---

[7] Doe also fails to mention that the plaintiff in *MIT* was *not* granted pseudonym status on the basis that the case arose from a proceeding made confidential by statute. There, the First Circuit did not decide whether to grant the plaintiff pseudonym status, instead remanding to the district court to resolve the issue in the first instance. *See* 46 F.4th at 76-77. On remand, the district court *rejected* the argument that even the far more stringent confidentiality provisions at

Second, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)—which held that the existence of an administrative procedure for releasing presidential materials "tips the scales" against release by the district court, *id.* at 606—is irrelevant here. That Congress provided that a Board respondent's name would be made public if the Board imposed sanctions following administrative proceedings does not reflect any judgment about the appropriateness of confidentiality for a Board respondent who decides to short-circuit that process. *Contra id.* at 604-05 (explaining that the statute in *Nixon* "provides for legislative and executive appraisal of the most appropriate means of assuring public access to the material").

*    *    *

In short, nothing in Section 7215 weighs in favor of, much less compels, pseudonymity here. Even assuming that Congress sought to shield accountants from "reputational and career damage" in making Board proceedings confidential, Opening Br. 21, that statutory purpose would not outweigh the myriad factors pointing against confidentiality when a respondent in a Board disciplinary proceeding elects to sue the Board in federal court. This Court has ruled that it will not lightly assume that Congress has by indirect means "overturned the longstanding presumption favoring judicial transparency." *Metlife, Inc. v. Fin. Stability Oversight*

---

issue in that case supported pseudonym status. *See Doe v. MIT*, 2022 WL 16554725, at *1 (D. Mass. Oct. 31, 2022).

39

*Council*, 865 F.3d 661, 669 (D.C. Cir. 2017). Doe has not come close to overcoming that presumption. Given Doe's exceedingly weak claim for pseudonymity, the district court did not abuse its discretion in finding, on balance, that his unsupported assertions about legislative policy concerns did not "move the needle." JA__ (Order 7).

## III. THE DISTRICT COURT PROPERLY DECLINED TO CONSIDER DOE'S ASSERTED LIKELIHOOD OF SUCCESS ON THE MERITS.

Doe finally contends that the district court erred by failing to weigh his asserted "likelihood of success on the merits" of his Seventh Amendment claim in assessing his pseudonymity motion. Opening Br. 43. That was not error: Doe's argument is both forfeited and meritless.

To begin, Doe forfeited this argument by raising it only in a footnote in his reply brief below. *See* Reply 3 n.2. This Court has repeatedly counseled against entertaining arguments "raised initially" in reply briefs or presented only in footnotes. *McBride v. Merrell Dow & Pharms.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986); *see CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014). The district court did not abuse its discretion in rejecting an argument that Doe did not properly raise.

Doe's argument also is entirely unsupported. Doe has never cited *any* precedent to buttress his position. *See* Opening Br. 43-44. Nor has he explained, even as a matter of first principles, why his assertion that he will prevail on a claim means that he should be permitted to bring that claim under a pseudonym. The

40

closest Doe comes is to say that, if he prevails on his Seventh Amendment claim, the Board would have to dismiss the "pending disciplinary proceeding against him without it ever becoming public." Opening Br. 44. But litigants seeking to proceed pseudonymously are *always* trying to avoid their names becoming public—for example, because they wish to preserve their privacy in sensitive matters or because they fear retaliation. This Court's five-factor test already accounts for those concerns—and Doe cannot prevail under it. *See* pp. 13-29, *supra*. The Court should reject Doe's effort to end run a test he cannot meet by repackaging his (essentially unsupported) privacy concerns into a novel likelihood-of-success analysis.

There is good reason Doe cannot identify any decision that has examined a litigant's likelihood of success in evaluating a pseudonymity motion—doing so would be unworkable and would severely undermine the "strong presumption of openness in judicial proceedings." *Sealed Case II*, 971 F.3d at 325. Requiring a likelihood-of-success analysis on a pseudonymity motion would extend the period in which plaintiffs remain pseudonymous, requiring courts to undertake complex merits analyses before resolving plaintiffs' motions. And it would require courts in some cases to conduct evidentiary hearings, *see Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004), which presumably would be closed to the public. Such an approach would do particular damage to the settled practice in this Circuit, where the Chief Judge of the District Court typically resolves requests for pseudonymity before cases

are assigned for adjudication on the merits. *See* D.D.C. LCvR 40.7(f); *see, e.g.,* *Plaintiff v. Verizon Commc'ns*, 2022 WL 168324, at *3 (D.D.C. Jan. 19, 2022) (denying leave to proceed pseudonymously and deferring request for injunction and merits question to "the district judge randomly assigned to th[e] case"). Under Doe's approach, the Chief Judge would have to hold onto cases to engage in potentially complicated merits analyses—and prejudge issues that would otherwise be addressed, in the first instance, by the judge assigned to the case.

Doe's own briefing exposes how ill-suited pseudonymity motions are for raising merits arguments. At the district court, Doe took the position that a pseudonymity motion was "not the appropriate venue to brief" his jury trial arguments. Reply 3 n.2; *see also* Opening Br. 44 ("the present appeal is not the appropriate venue to brief" merits). He contended that the district court should, nonetheless, conclude that he was likely to succeed on his claim because *SEC v. Jarkesy*, 603 U.S. 109 (2024), involved "the same types of relief sought by the Board" and because his claim is "nearly identical" to the one at issue in *Jarkesy*. Reply 3 n.2; *see also* Opening Br. 44 (same). Doe's two-sentence analysis is grossly oversimplified—not to mention wrong. As both the Board and the United States have explained extensively in summary-judgment briefing, the district court lacks jurisdiction to consider Doe's jury-trial claim and, even if considered, the claim is meritless. *See* ECF No. 110-1, at 5-21 (Board's summary judgment motion); ECF

42

No. 115, at 3-11 (Board's summary judgment reply); ECF No. 112, at 8-21 (U.S. summary judgment brief). To analyze Doe's likelihood of success, the Chief Judge could not possibly have relied on Doe's conclusory characterizations of his claim and, instead, would have had to order additional briefing along the lines of what is now playing out in summary-judgment proceedings below—thereby significantly delaying the litigation and forcing consideration of questions that are properly left for the district-court judge assigned to the case on the merits. The court below did not abuse its discretion in declining to conduct this analysis.

## CONCLUSION

This Court should affirm the district court's order denying Doe's motion to proceed under a pseudonym.

Dated:  February 9, 2026            Respectfully submitted,

Jeffrey A. Lamken
Robert K. Kry
MoloLamken LLP
600 New Hampshire Ave. NW
Suite 500
Washington, DC 20037
Telephone: (202) 556-2000
jlamken@mololamken.com

*/s/ Donald B.  Verrilli, Jr.*
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Rachel G. Miller-Ziegler
Munger, Tolles & Olson LLP
601 Massachusetts Ave. NW
Suite 500 E
Washington, DC 20001
Telephone: (202) 220-1100
Donald.Verrilli@mto.com

*Counsel for Appellee Public Company Accounting Oversight Board*

43

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellant Procedure, the undersigned counsel hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B).  As measured by the word-processing system used to prepare this brief, there are 10,207 words in the brief excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).

Dated:  February 9, 2026                              */s/ Donald B.  Verrilli, Jr.*
                                                       Donald B. Verrilli, Jr.

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2026, a true and correct copy of this Brief was filed via the Court's electronic filing system, which will forward a copy to all counsel of record. I certify that all participants in this case are registered CM/ECF users.

Dated: February 9, 2026                    */s/ Donald B. Verrilli, Jr.*
                                           Donald B. Verrilli, Jr.

# ADDENDUM

# TABLE OF CONTENTS

15 U.S.C. § 78u-6 ............................................................................... ADD-1

Federal Rule of Criminal Procedure 6 ............................................... ADD-6

i

### (d) Duty to update

Nothing in this section shall impose upon any person a duty to update a forward-looking statement.

### (e) Dispositive motion

On any motion to dismiss based upon subsection (c)(1), the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant.

### (f) Stay pending decision on motion

In any private action arising under this chapter, the court shall stay discovery (other than discovery that is specifically directed to the applicability of the exemption provided for in this section) during the pendency of any motion by a defendant for summary judgment that is based on the grounds that—

(1) the statement or omission upon which the complaint is based is a forward-looking statement within the meaning of this section; and

(2) the exemption provided for in this section precludes a claim for relief.

### (g) Exemption authority

In addition to the exemptions provided for in this section, the Commission may, by rule or regulation, provide exemptions from or under any provision of this chapter, including with respect to liability that is based on a statement or that is based on projections or other forward-looking information, if and to the extent that any such exemption is consistent with the public interest and the protection of investors, as determined by the Commission.

### (h) Effect on other authority of Commission

Nothing in this section limits, either expressly or by implication, the authority of the Commission to exercise similar authority or to adopt similar rules and regulations with respect to forward-looking statements under any other statute under which the Commission exercises rulemaking authority.

### (i) Definitions

For purposes of this section, the following definitions shall apply:

### (1) Forward-looking statement

The term ''forward-looking statement'' means—

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

### (2) Investment company

The term ''investment company'' has the same meaning as in section 80a–3(a) of this title.

### (3) Going private transaction

The term ''going private transaction'' has the meaning given that term under the rules or regulations of the Commission issued pursuant to section 78m(e) of this title.

### (4) Person acting on behalf of an issuer

The term ''person acting on behalf of an issuer'' means any officer, director, or employee of such issuer.

### (5) Other terms

The terms ''blank check company'', ''rollup transaction'', ''partnership'', ''limited liability company'', ''executive officer of an entity'' and ''direct participation investment program'', have the meanings given those terms by rule or regulation of the Commission.

(June 6, 1934, ch. 404, title I, § 21E, as added Pub. L. 104–67, title I, § 102(b), Dec. 22, 1995, 109 Stat. 753.)

### EDITORIAL NOTES

#### REFERENCES IN TEXT

This chapter, referred to in subsecs. (c)(1), (f), and (g), was in the original ''this title''. See References in Text note set out under section 78a of this title.

### STATUTORY NOTES AND RELATED SUBSIDIARIES

#### EFFECTIVE DATE

This section not to affect or apply to any private action arising under this chapter or title I of the Securities Act of 1933 (15 U.S.C. 77a et seq.), commenced before and pending on Dec. 22, 1995, see section 108 of Pub. L. 104–67, set out as an Effective Date of 1995 Amendment note under section 77l of this title.

#### CONSTRUCTION

Nothing in section to be deemed to create or ratify any implied right of action, or to prevent Commission, by rule or regulation, from restricting or otherwise regulating private actions under this chapter, see section 203 of Pub. L. 104–67, set out as a note under section 78j–1 of this title.

## § 78u–6. Securities whistleblower incentives and protection

### (a) Definitions

In this section the following definitions shall apply:

### (1) Covered judicial or administrative action

The term ''covered judicial or administrative action'' means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000.

ADD-1

**(2) Fund**

The term ''Fund'' means the Securities and Exchange Commission Investor Protection Fund.

**(3) Original information**

The term ''original information'' means information that—

(A) is derived from the independent knowledge or analysis of a whistleblower;

(B) is not known to the Commission from any other source, unless the whistleblower is the original source of the information; and

(C) is not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information.

**(4) Monetary sanctions**

The term ''monetary sanctions'', when used with respect to any judicial or administrative action, means—

(A) any monies, including penalties, disgorgement, and interest, ordered to be paid; and

(B) any monies deposited into a disgorgement fund or other fund pursuant to section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)), as a result of such action or any settlement of such action.

**(5) Related action**

The term ''related action'', when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

**(6) Whistleblower**

The term ''whistleblower'' means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission.

**(b) Awards**

**(1) In general**

In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to—

(A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

(B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

**(2) Payment of awards**

Any amount paid under paragraph (1) shall be paid from the Fund.

**(c) Determination of amount of award; denial of award**

**(1) Determination of amount of award**

**(A) Discretion**

The determination of the amount of an award made under subsection (b) shall be in the discretion of the Commission.

**(B) Criteria**

In determining the amount of an award made under subsection (b), the Commission—

(i) shall take into consideration—

(I) the significance of the information provided by the whistleblower to the success of the covered judicial or administrative action;

(II) the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in a covered judicial or administrative action;

(III) the programmatic interest of the Commission in deterring violations of the securities laws by making awards to whistleblowers who provide information that lead to the successful enforcement of such laws; and

(IV) such additional relevant factors as the Commission may establish by rule or regulation; and

(ii) shall not take into consideration the balance of the Fund.

**(2) Denial of award**

No award under subsection (b) shall be made—

(A) to any whistleblower who is, or was at the time the whistleblower acquired the original information submitted to the Commission, a member, officer, or employee of—

(i) an appropriate regulatory agency;

(ii) the Department of Justice;

(iii) a self-regulatory organization;

(iv) the Public Company Accounting Oversight Board; or

(v) a law enforcement organization;

(B) to any whistleblower who is convicted of a criminal violation related to the judicial or administrative action for which the whistleblower otherwise could receive an award under this section;

(C) to any whistleblower who gains the information through the performance of an audit of financial statements required under the securities laws and for whom such submission would be contrary to the requirements of section 78j–1 of this title; or

(D) to any whistleblower who fails to submit information to the Commission in such form as the Commission may, by rule, require.

**(d) Representation**

**(1) Permitted representation**

Any whistleblower who makes a claim for an award under subsection (b) may be represented by counsel.

ADD-2

**(2) Required representation**

**(A) In general**

Any whistleblower who anonymously makes a claim for an award under subsection (b) shall be represented by counsel if the whistleblower anonymously submits the information upon which the claim is based.

**(B) Disclosure of identity**

Prior to the payment of an award, a whistleblower shall disclose the identity of the whistleblower and provide such other information as the Commission may require, directly or through counsel for the whistleblower.

**(e) No contract necessary**

No contract with the Commission is necessary for any whistleblower to receive an award under subsection (b), unless otherwise required by the Commission by rule or regulation.

**(f) Appeals**

Any determination made under this section, including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission. Any such determination, except the determination of the amount of an award if the award was made in accordance with subsection (b), may be appealed to the appropriate court of appeals of the United States not more than 30 days after the determination is issued by the Commission. The court shall review the determination made by the Commission in accordance with section 706 of title 5.

**(g) Investor Protection Fund**

**(1) Fund established**

There is established in the Treasury of the United States a fund to be known as the "Securities and Exchange Commission Investor Protection Fund".

**(2) Use of Fund**

The Fund shall be available to the Commission, without further appropriation or fiscal year limitation, for—

(A) paying awards to whistleblowers as provided in subsection (b); and

(B) funding the activities of the Inspector General of the Commission under section 78d(i) of this title.

**(3) Deposits and credits**

**(A) In general**

There shall be deposited into or credited to the Fund an amount equal to—

(i) any monetary sanction collected by the Commission in any judicial or administrative action brought by the Commission under the securities laws that is not added to a disgorgement fund or other fund under section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246) or otherwise distributed to victims of a violation of the securities laws, or the rules and regulations thereunder, underlying such action, unless the balance of the Fund at the time the monetary sanction is collected exceeds $300,000,000;

(ii) any monetary sanction added to a disgorgement fund or other fund under section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246) that is not distributed to the victims for whom the Fund was established, unless the balance of the disgorgement fund at the time the determination is made not to distribute the monetary sanction to such victims exceeds $200,000,000; and

(iii) all income from investments made under paragraph (4).

**(B) Additional amounts**

If the amounts deposited into or credited to the Fund under subparagraph (A) are not sufficient to satisfy an award made under subsection (b), there shall be deposited into or credited to the Fund an amount equal to the unsatisfied portion of the award from any monetary sanction collected by the Commission in the covered judicial or administrative action on which the award is based.

**(4) Investments**

**(A) Amounts in Fund may be invested**

The Commission may request the Secretary of the Treasury to invest the portion of the Fund that is not, in the discretion of the Commission, required to meet the current needs of the Fund.

**(B) Eligible investments**

Investments shall be made by the Secretary of the Treasury in obligations of the United States or obligations that are guaranteed as to principal and interest by the United States, with maturities suitable to the needs of the Fund as determined by the Commission on the record.

**(C) Interest and proceeds credited**

The interest on, and the proceeds from the sale or redemption of, any obligations held in the Fund shall be credited to the Fund.

**(5) Reports to Congress**

Not later than October 30 of each fiscal year beginning after July 21, 2010, the Commission shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives a report on—

(A) the whistleblower award program, established under this section, including—

(i) a description of the number of awards granted; and

(ii) the types of cases in which awards were granted during the preceding fiscal year;

(B) the balance of the Fund at the beginning of the preceding fiscal year;

(C) the amounts deposited into or credited to the Fund during the preceding fiscal year;

(D) the amount of earnings on investments made under paragraph (4) during the preceding fiscal year;

(E) the amount paid from the Fund during the preceding fiscal year to whistleblowers pursuant to subsection (b);

(F) the balance of the Fund at the end of the preceding fiscal year; and

(G) a complete set of audited financial statements, including—

(i) a balance sheet;

(ii) income statement; and

(iii) cash flow analysis.

**(h) Protection of whistleblowers**

**(1) Prohibition against retaliation**

**(A) In general**

No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1(m) of this title, section 1513(e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

**(B) Enforcement**

**(i) Cause of action**

An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C).

**(ii) Subpoenas**

A subpoena requiring the attendance of a witness at a trial or hearing conducted under this section may be served at any place in the United States.

**(iii) Statute of limitations**

**(I) In general**

An action under this subsection may not be brought—

(aa) more than 6 years after the date on which the violation of subparagraph (A) occurred; or

(bb) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A).

**(II) Required action within 10 years**

Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs.

**(C) Relief**

Relief for an individual prevailing in an action brought under subparagraph (B) shall include—

(i) reinstatement with the same seniority status that the individual would have had, but for the discrimination;

(ii) 2 times the amount of back pay otherwise owed to the individual, with interest; and

(iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

**(2) Confidentiality**

**(A) In general**

Except as provided in subparagraphs (B) and (C), the Commission and any officer or employee of the Commission shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower, except in accordance with the provisions of section 552a of title 5, unless and until required to be disclosed to a defendant or respondent in connection with a public proceeding instituted by the Commission or any entity described in subparagraph (C). For purposes of section 552 of title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section.

**(B) Exempted statute**

For purposes of section 552 of title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section 552.

**(C) Rule of construction**

Nothing in this section is intended to limit, or shall be construed to limit, the ability of the Attorney General to present such evidence to a grand jury or to share such evidence with potential witnesses or defendants in the course of an ongoing criminal investigation.

**(D) Availability to government agencies**

**(i) In general**

Without the loss of its status as confidential in the hands of the Commission, all information referred to in subparagraph (A) may, in the discretion of the Commission, when determined by the Commission to be necessary to accomplish the purposes of this chapter and to protect investors, be made available to—

(I) the Attorney General of the United States;

(II) an appropriate regulatory authority;

(III) a self-regulatory organization;

(IV) a State attorney general in connection with any criminal investigation;

(V) any appropriate State regulatory authority;

(VI) the Public Company Accounting Oversight Board;

(VII) a foreign securities authority; and

(VIII) a foreign law enforcement authority.

**(ii) Confidentiality**

**(I) In general**

Each of the entities described in subclauses (I) through (VI) of clause (i) shall maintain such information as confidential in accordance with the requirements established under subparagraph (A).

ADD-4

**(II) Foreign authorities**

Each of the entities described in subclauses (VII) and (VIII) of clause (i) shall maintain such information in accordance with such assurances of confidentiality as the Commission determines appropriate.

**(3) Rights retained**

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any whistleblower under any Federal or State law, or under any collective bargaining agreement.

**(i) Provision of false information**

A whistleblower shall not be entitled to an award under this section if the whistleblower—

(1) knowingly and willfully makes any false, fictitious, or fraudulent statement or representation; or

(2) uses any false writing or document knowing the writing or document contains any false, fictitious, or fraudulent statement or entry.

**(j) Rulemaking authority**

The Commission shall have the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section.

(June 6, 1934, ch. 404, title I, § 21F, as added Pub. L. 111–203, title IX, § 922(a), July 21, 2010, 124 Stat. 1841.)

### Editorial Notes

#### REFERENCES IN TEXT

The Sarbanes-Oxley Act of 2002, referred to in subsec. (h)(1)(A)(iii), is Pub. L. 107–204, July 30, 2002, 116 Stat. 745. For complete classification of this Act to the Code, see Short Title note set out under section 7201 of this title and Tables.

This chapter, referred to in subsec. (h)(1)(A)(iii), was in the original ''the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.)''. This chapter, referred to in subsec. (h)(2)(D)(i), was in the original ''this Act''. See References in Text note set out under section 78a of this title.

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

### § 78u–7. Implementation and transition provisions for whistleblower protection

**(a) Implementing rules**

The Commission shall issue final regulations implementing the provisions of section 78u–6 of this title, as added by this subtitle, not later than 270 days after July 21, 2010.

**(b) Original information**

Information provided to the Commission in writing by a whistleblower shall not lose the status of original information (as defined in section 78u–6(a)(3) of this title, as added by this subtitle) solely because the whistleblower provided the information prior to the effective date of the regulations, if the information is provided by the whistleblower after July 21, 2010.

**(c) Awards**

A whistleblower may receive an award pursuant to section 78u–6 of this title, as added by this subtitle, regardless of whether any violation of a provision of the securities laws, or a rule or regulation thereunder, underlying the judicial or administrative action upon which the award is based, occurred prior to July 21, 2010.

**(d) Administration and enforcement**

The Securities and Exchange Commission shall establish a separate office within the Commission to administer and enforce the provisions of section 78u–6 of this title (as add[1] by section 922(a)).[2] Such office shall report annually to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives on its activities, whistleblower complaints, and the response of the Commission to such complaints.

(Pub. L. 111–203, title IX, § 924, July 21, 2010, 124 Stat. 1850.)

### Editorial Notes

#### REFERENCES IN TEXT

This subtitle, referred to in subsecs. (a) to (c), means subtitle B (§§ 921–929Z) of title IX of Pub. L. 111–203.

Section 922(a), referred to in subsec. (d), means section 922(a) of Pub. L. 111–203.

#### CODIFICATION

Section was enacted as part of the Investor Protection and Securities Reform Act of 2010, and also as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and not as part of the Securities Exchange Act of 1934 which comprises this chapter.

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

#### DEFINITIONS

For definitions of ''Commission'' and ''securities laws'' as used in this section, see section 5301 of Title 12, Banks and Banking.

### § 78v. Hearings by Commission

Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.

(June 6, 1934, ch. 404, title I, § 22, 48 Stat. 901.)

### Executive Documents

#### TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

---

[1] So in original. Probably should be ''added''.

[2] See References in Text note below.

9    FEDERAL RULES OF CRIMINAL PROCEDURE    **Rule 6**

### TITLE III. THE GRAND JURY, THE INDICTMENT, AND THE INFORMATION

**Rule 6. The Grand Jury**

**(a) Summoning a Grand Jury.**

**(1) *In General.*** When the public interest so requires, the court must order that one or more grand juries be summoned. A grand jury must have 16 to 23 members, and the court must order that enough legally qualified persons be summoned to meet this requirement.

**(2) *Alternate Jurors.*** When a grand jury is selected, the court may also select alternate jurors. Alternate jurors must have the same qualifications and be selected in the same manner as any other juror. Alternate jurors replace jurors in the same sequence in which the alternates were selected. An alternate juror who replaces a juror is subject to the same challenges, takes the same oath, and has the same authority as the other jurors.

**(b) Objection to the Grand Jury or to a Grand Juror.**

**(1) *Challenges.*** Either the government or a defendant may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected, and may challenge an individual juror on the ground that the juror is not legally qualified.

**(2) *Motion to Dismiss an Indictment.*** A party may move to dismiss the indictment based on an objection to the grand jury or on an individual juror's lack of legal qualification, unless the court has previously ruled on the same objection under Rule 6(b)(1). The motion to dismiss is governed by 28 U.S.C. § 1867(e). The court must not dismiss the indictment on the ground that a grand juror was not legally qualified if the record shows that at least 12 qualified jurors concurred in the indictment.

**(c) Foreperson and Deputy Foreperson.** The court will appoint one juror as the foreperson and another as the deputy foreperson. In the foreperson's absence, the deputy foreperson will act as the foreperson. The foreperson may administer oaths and affirmations and will sign all indictments. The foreperson—or another juror designated by the foreperson—will record the number of jurors concurring in every indictment and will file the record with the clerk, but the record may not be made public unless the court so orders.

ADD-6

**Rule 6**  FEDERAL RULES OF CRIMINAL PROCEDURE  10

**(d) Who May Be Present.**

**(1) *While the Grand Jury Is in Session.*** The following persons may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device.

**(2) *During Deliberations and Voting.*** No person other than the jurors, and any interpreter needed to assist a hearing-impaired or speech-impaired juror, may be present while the grand jury is deliberating or voting.

**(e) Recording and Disclosing the Proceedings.**

**(1) *Recording the Proceedings.*** Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

**(2) *Secrecy.***

(A) No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

(B) Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

(i) a grand juror;

(ii) an interpreter;

(iii) a court reporter;

(iv) an operator of a recording device;

(v) a person who transcribes recorded testimony;

(vi) an attorney for the government; or

(vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

**(3) *Exceptions.***

(A) Disclosure of a grand-jury matter—other than the grand jury's deliberations or any grand juror's vote—may be made to:

(i) an attorney for the government for use in performing that attorney's duty;

(ii) any government personnel—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

(iii) a person authorized by 18 U.S.C. § 3322.

(B) A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

(C) An attorney for the government may disclose any grand-jury matter to another federal grand jury.

ADD-7

11      FEDERAL RULES OF CRIMINAL PROCEDURE      **Rule 6**

(D) An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counter-intelligence (as defined in 50 U.S.C. § 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

(i) Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

(ii) Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that such information was disclosed and the departments, agencies, or entities to which the disclosure was made.

(iii) As used in Rule 6(e)(3)(D), the term ''foreign intelligence information'' means:

(a) information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against—

• actual or potential attack or other grave hostile acts of a foreign power or its agent;

• sabotage or international terrorism by a foreign power or its agent; or

• clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or

(b) information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to—

• the national defense or the security of the United States; or

• the conduct of the foreign affairs of the United States.

ADD-8

**Rule 6**     FEDERAL RULES OF CRIMINAL PROCEDURE     12

(E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:

(i) preliminarily to or in connection with a judicial proceeding;

(ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

(iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

(iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

(v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

(F) A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is ex parte—as it may be when the government is the petitioner—the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

(i) an attorney for the government;

(ii) the parties to the judicial proceeding; and

(iii) any other person whom the court may designate.

(G) If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy. The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

**(4)** ***Sealed Indictment.*** The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

**(5)** ***Closed Hearing.*** Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

**(6)** ***Sealed Records.*** Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

ADD-9

13      FEDERAL RULES OF CRIMINAL PROCEDURE      **Rule 7**

  **(7)** *Contempt.* A knowing violation of Rule 6, or of any guidelines jointly issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court.

**(f) Indictment and Return.** A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court. To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.

**(g) Discharging the Grand Jury.** A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. An extension may be granted for no more than 6 months, except as otherwise provided by statute.

**(h) Excusing a Juror.** At any time, for good cause, the court may excuse a juror either temporarily or permanently, and if permanently, the court may impanel an alternate juror in place of the excused juror.

**(i) "Indian Tribe" Defined.** ''Indian tribe'' means an Indian tribe recognized by the Secretary of the Interior on a list published in the Federal Register under 25 U.S.C. §479a–1.[1]

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 24, 1972, eff. Oct. 1, 1972; Apr. 26 and July 8, 1976, eff. Aug. 1, 1976; Pub. L. 95–78, §2(a), July 30, 1977, 91 Stat. 319, eff. Oct. 1, 1977; Apr. 30, 1979, eff. Aug. 1, 1979; Apr. 28, 1983, eff. Aug. 1, 1983; Pub. L. 98–473, title II, §215(f), Oct. 12, 1984, 98 Stat. 2016, eff. Nov. 1, 1987; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 26, 1999, eff. Dec. 1, 1999; Pub. L. 107–56, title II, §203(a), Oct. 26, 2001, 115 Stat. 278; Apr. 29, 2002, eff. Dec. 1, 2002; Pub. L. 107–296, title VIII, §895, Nov. 25, 2002, 116 Stat. 2256; Pub. L. 108–458, title VI, §6501(a), Dec. 17, 2004, 118 Stat. 3760; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 25, 2014, eff. Dec. 1, 2014.)

[1] Now editorially reclassified 25 U.S.C. 5131.

ADD-10