Oral Argument Scheduled for May 8, 2026
No. 24-5195

---

# In the United States Court of Appeals
## for the District of Columbia Circuit

---

JOHN DOE,

*Plaintiff-Appellant,*

*v.*

PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD,

*Defendant-Appellee,*

and

UNITED STATES OF AMERICA,

*Intervenor.*

---

On Appeal from the United States District Court
for the District of Columbia, No. 1:24-cv-00780-UNA

---

## PLAINTIFF-APPELLANT'S REPLY BRIEF

---

Ian D. Roffman
Melanie V. Woodward
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA  02210
(617) 439-2421
iroffman@nutter.com

Russell G. Ryan
(*Counsel of Record*)
Casey Norman
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

*Counsel for Plaintiff-Appellant
John Doe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii

GLOSSARY .......................................................................................v

SUMMARY OF ARGUMENT ..............................................................1

ARGUMENT ......................................................................................2

    I. THE BOARD'S PROFFERED INTERPRETATION OF SARBANES-OXLEY IS NONSENSICAL, SELF-CONTRADICTORY, AND BESIDE THE POINT .......2

        A.   The Board's Interpretation Makes No Textual Sense .........2

        B.   The Board's Interpretation Is Self-Contradictory.................6

        C.   The Board's Interpretation Is Beside the Point ..................12

        D.   The Board's Purported Distinctions from Other Statutory and Rule-Based Secrecy Regimes Are Immaterial .............16

    II.  THE BOARD'S *SEALED CASE* BOX-CHECKING IS WRONG .................20

    III. THE BOARD HAS NO ANSWER TO THE MOST BASIC QUESTION ........28

CONCLUSION .................................................................................30

CERTIFICATE OF COMPLIANCE......................................................32

CERTIFICATE OF SERVICE..............................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  41 F.4th 586 (D.C. Cir. 2022) ...........................................................16

*Citizens for Resp. & Ethics in Wash. v. DOJ*,
  854 F.3d 675 (D.C. Cir. 2017)...........................................................22

*Doe v. Hill*,
  141 F.4th 291 (D.C. Cir. 2025) .........................................................23

*Doe v. MIT*,
  46 F.4th 61 (1st Cir. 2022) ................................................... 12, 14, 15

*Doe v. Town of Lisbon*,
  78 F.4th 38 (1st Cir. 2023) ................................................................14

*In re Sealed Case*,
  237 F.3d 657 (D.C. Cir. 2001)................................................ 13, 19, 22

*Loper Bright Enterprises v. Raimondo and Relentless, Inc. v.
  Department of Commerce*,
  603 U.S. 369 (2024) .............................................................................3

*MetLife, Inc. v. Financial Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017)....................................................5, 13, 14

*Mountgordon v. U.S. Coast Guard*,
  691 F. Supp. 3d 72 (D.D.C. 2023).....................................................23

*Roe v. Wade*,
  410 U.S. 113 (1973) ...........................................................................27

**Statutes**

15 U.S.C. § 7215(b)(5)(A)............................................................2, 4, 17

15 U.S.C. § 7215(c)(2) ...........................................................................2

**Other Authorities**

Andrew J. Morris,
*The Sarbanes Oxley Privilege for Public Company Accounting
Oversight Board Materials: Its Implications for SEC Enforcement
Proceedings*,
5 HARV. BUS. L. REV. ONLINE 87 (2015) .............................................. 18

Board Ethics Code § EC5 ....................................................................... 3

Board Ethics Code § EC9 ....................................................................... 3

Board Press Release,
"PCAOB Staff Directed to Develop Proposal to Ask Congress to Make
Public Disciplinary Hearings and Related Proceedings" (Aug. 5,
2010) ...................................................................................................... 24

Board Rule 5108 ..................................................................................... 2

Board Rule 5440 ..................................................................................... 2

Claudius B. Modesti,
"The Need for Transparency in PCAOB Disciplinary Proceedings"
(Sept. 28, 2010) ..................................................................................... 24

James E. Pfander,
*Sovereign Immunity and the Right to Petition: Toward a First
Amendment Right to Pursue Judicial Claims Against the Government*,
91 NW. U. L. REV. 899 (1997) ............................................................... 28

Note, *A Petition Clause Analysis of Suits Against the Government:
Implications for Rule 11 Sanctions*,
106 HARV. L. REV. 1111 (1993) ............................................................ 28

Soyoung Ho,
"Enforcement Staff Supports Legislation to Make PCAOB
Disciplinary Proceedings Public," Thomson Reuters (June 15,
2022) ...................................................................................................... 24

**Regulations**

SEC,
*Framework for Enhancing the Quality of Financial Information
Through Improvement of Oversight of the Auditing Process*,
67 Fed. Reg. 44964 (proposed July 5, 2002) ........................................18

## GLOSSARY

Board      Public Company Accounting Oversight Board

FEC        Federal Election Commission

SEC        Securities and Exchange Commission

## SUMMARY OF ARGUMENT

Plaintiff-Appellant John Doe respectfully submits this reply brief in further support of his appeal from the district court's denial of his request to litigate pseudonymously. As explained below, Defendant-Appellee Board seeks to justify the district court's ruling by offering a convoluted interpretation of the Sarbanes-Oxley Act that makes no textual sense, is self-contradictory, and is ultimately beside the point. Moreover, the Board's disparagement of Doe's privacy and reputational interests as "speculative" ignores this Court's repeated acknowledgements that those interests are not only strong and legitimate but also obvious. Even the Board's preference to engage in a rote box-checking approach—which this Court has repeatedly warned against—falls short, because most of the five factors identified by this Court as *just the starting point* of any conscientious pseudonymity analysis weigh decidedly in Doe's favor.

The district court's decision should be reversed.

## ARGUMENT

### I.    THE BOARD'S PROFFERED INTERPRETATION OF SARBANES-OXLEY IS NONSENSICAL, SELF-CONTRADICTORY, AND BESIDE THE POINT

### A.    The Board's Interpretation Makes No Textual Sense

The Board does not dispute that, but for this lawsuit, Appellant Doe's identity as the subject of as-yet wholly untested allegations by private Board staff members would be comprehensively shielded from public view due to the extraordinarily strong confidentiality mandates Congress imposed in Sarbanes-Oxley. *See generally* 15 U.S.C. § 7215(b)(5)(A) (mandating confidentiality of documents, information, and deliberations in connection with Board inspections and investigations); *id.* § 7215(c)(2) (Board hearings shall be nonpublic unless *all* parties consent and the Board finds good cause to order a hearing public).[1] Those statutory mandates are reinforced by the Board's own strict secrecy rules governing the type of proceeding Doe is challenging in this lawsuit. *See* Board Rule 5108 (confidentiality of investigatory records); Board Rule 5440 (forbidding purchase of hearing transcript by

---

[1] The full text of these provisions is reproduced at pages 4-5 and 7 of the Addendum to Doe's Opening Brief.

a nonparty to the proceeding); Board Ethics Code § EC5 (Board members and staff may not "disseminate or otherwise disclose any confidential, non-public information obtained by virtue of their position with the Board, regardless of whether that information may be considered to be 'material' under the securities laws"); Board Ethics Code § EC9 (similar).[2]

The Board nevertheless insists that the Court should toss those statutory protections to the wind because, under the Board's (current) reading, those same strong protections categorically self-destruct in any public judicial proceeding like this one. *See* Board Br. at 31-33. The Board purports to find this self-destruction mechanism in a strained reading of a narrow statutory exception that contains the phrase "public proceeding." But the Board cannot seriously believe that its capacious reading of that phrase is what Congress meant—nor the best interpretation of the statutory text.[3]

---

[2] These Board rules are available at https://pcaobus.org/about/rules-rulemaking/rules.

[3] Even under the erstwhile *Chevron* approach, the Board was entitled to no judicial deference in its preferred statutory interpretations because it is not a federal agency but rather a private corporation. Even if it could ever have claimed entitlement to such deference, any such claim would now be untenable in light of *Loper Bright Enterprises v. Raimondo and Relentless, Inc. v. Department of Commerce*, 603 U.S. 369 (2024).

The specific statutory provision at issue reads as follows:

Except as provided in subparagraphs (B) and (C) [neither of which is applicable here], all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 7214 of this title or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. 552a), or otherwise, unless and until presented in connection with a public proceeding or released in accordance with subsection (c).

15 U.S.C. § 7215(b)(5)(A).

Under the Board's proposed reading, the "public proceeding" exception at the end of this statutory provision would swallow up the rest of the rule, effectively negating much of the text that immediately precedes it. That text goes to extraordinary lengths—possibly *unique* lengths—to ensure the secrecy of all information related to ongoing Board investigations and disciplinary proceedings. For example, unlike many other statutory confidentiality protections, it expressly shields Board investigatory information from, among other things, being used as evidence—or even produced through civil discovery or other legal

4

process—"in any proceeding in any Federal or State court or administrative agency." Equally unusual and instructive is the statute's explicit exemption from disclosure under the Freedom of Information Act. *Contra MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 669-70 (D.C. Cir. 2017) (emphasizing that the statutory confidentiality provision at issue there made no express mention of its applicability in any judicial proceeding and expressly stated that confidential materials were fully subject to public disclosure under FOIA).

The Board's expansive reading of this "public proceeding" exception toward the end of the section would largely vaporize Congress's comprehensive confidentiality protections, because virtually all "proceeding[s] in any Federal or State court or administrative agency" are, by definition, *public* proceedings. Under the Board's convoluted reading, the Board's investigative and disciplinary information would be categorically off limits "in any proceeding in any Federal or State court or administrative agency"—but only when the proceeding is not a "public proceeding." That is, the confidentiality protections would actually apply

in approximately *zero* federal or state court or administrative agency proceedings.

There is of course a superior reading of the relevant statutory text that makes perfectly good sense and preserves the strong confidentiality protections Congress obviously intended.    What Congress obviously exempted (perhaps inartfully) was only information that, "in accordance with subsection (c)"—that is, in the context of a disciplinary proceeding under subsection (c)—is either (1) "presented" in a public disciplinary proceeding conducted under that subsection or (2) "released" in the approved course of such a proceeding, such as when the Board must report any imposed final sanctions to the Securities and Exchange Commission ("SEC"), to appropriate state regulators, and to the public as required by subsection (d) of the same section 7215.   Under this most sensible reading of the statute, Doe's name has never been "presented" or "released" in any manner that would trigger the narrow exception.

## B.  The Board's Interpretation Is Self-Contradictory

Beyond  making a hash of the statutory text, the Board's expansive reading of the "public proceeding" exception is hard to square with the positions the Board has taken in the district court proceedings moving

6

forward contemporaneously with this appeal—positions the district court found compelling.[4] In particular, the Board categorically refused in this supposedly "public proceeding" to provide *any* discovery concerning SEC's supervision (if any) of the Board's investigation of Appellant Doe— not even the equivalent of a bare-bones privilege log that would have reflected only the number of times and dates (if any) that the Board or its staff communicated with SEC or its staff in connection with the Board's investigation of Doe.[5] The reason? Because the same statutory secrecy mandates the Board now says are inoperable in this "public proceeding" prohibited it—in the same "public proceeding"—from producing any discovery concerning its investigation of Doe.

The full transcript of the relevant discovery status conference is included in the Joint Appendix (JA 073-118), but several illustrative exchanges are quoted below:

---

[4] The case was assigned to a different district judge after the chief judge denied Doe's pseudonymity motion and stayed the effect of that denial pending this appeal.

[5] This attempted discovery was directly relevant to Doe's claim, under the so-called private nondelegation doctrine, that the Board and its private-citizen enforcement staff exercise core executive power with virtually no real-time SEC supervision or direction.

THE COURT: Okay. So basically [the Board's] view is, gosh, we'd love to help you [by providing discovery], but I would be violating the law and I would be a felon.

[BOARD COUNSEL]: There's a statute that forbids the disclosure of the information. We're not free to disobey it and it's—

THE COURT: ... [W]ould information include, I guess, the timing of the—when the communications were made and number of the communications—

[BOARD COUNSEL]: Yes.

THE COURT: —and certainly the content of the communications.

[BOARD COUNSEL]: Certainly would cover all three.

THE COURT: Okay. Well, that does seem to be a problem for [Plaintiff Doe's] position.

JA 087.

After brief discussion of other arguments, during which Board counsel urged that "the statute is conclusive," the Court began further colloquy directed at Doe's counsel:

THE COURT: Okay. But let's say the [Board] received a third-party subpoena. Let's say an entity and a former employee are having a big fight and whatever the [Board] did in its investigation is relevant to that fight for them as a third party. This [statutory confidentiality protection] would clearly apply; right?

[DOE'S COUNSEL]: Clearly.

THE COURT: Okay. So I just—I don't see how I can carve out sort of your specific situation because this statute is—I

mean, pretty unambiguous.   I mean, all documents and information prepared or received by or specifically for the Board, blah, blah, blah, in connection with an inspection, the issue here is an inspection under [15 U.S.C. §] 7214, right?

[DOE'S COUNSEL]:  It's a disciplinary hearing.

THE COURT:  Okay.  Well, a disciplinary hearing. …   Which this covers as well, right?

....

[BOARD COUNSEL]:   I'm sorry, just to be clear, it's in connection with an investigation under this section.

THE COURT:  Oh, I see.

[BOARD COUNSEL]:  And Section 7215 is investigations and disciplinary proceedings.

THE COURT:  Got it.

[BOARD COUNSEL]:  It's obviously in connection with the investigation that led to the disciplinary proceedings.  So it clearly covers it.

THE COURT:  So I think what [Doe's Counsel is] trying to get me to do is read language into this that doesn't exist, which [would say] except if the [Board] itself is getting sued and I can't do that.  I mean, trust me, I'm not a constitutional law scholar ..., but it seems to me that that is pretty clearly something I can't do.

[DOE'S COUNSEL]:  [I]t does strike us that what this statute is not doing is preventing basic discovery of the extent of [SEC] supervision that's required under the Constitution.  I mean, this statute—

THE COURT:  Yeah, but all means all.  It doesn't say all but those documents relating to whether the SEC is investigating the [Board].  I mean, I guess you could file a third-party

9

subpoena to the SEC and see if you can get around the statute by determining what the SEC itself did. Although, I think you'd probably still run up against this language. But clearly, I can't—all means all, I can't sort of create a carve out that the statute doesn't provide for.

JA 091-93.

After further discussion, the district court appeared inclined at least to compel the Board to "just give [Doe] a log of the communications" between the Board and the SEC concerning the Board's investigation of Doe. "And the only thing the log has is, you know, the date of the communication, you can just put communication 1 and the date. So the only thing the log would show is one, date; two, date; three, date. Nothing else. And that would tell [Doe] the timing of the communications." JA 095. But Board Counsel pushed back even against that minimalist compromise:

> [BOARD COUNSEL]: I understand the desire to find common ground here on this. I do think the statute would definitely cover that as well for the following reason, Your Honor, it's because what they want to infer from that is the extent to which the SEC is supervising and the nature of the supervision based on the timing and they're trying to get at that information—
>
> THE COURT: Oh, yeah, I think he would agree with you whole heartily [sic] on that. I agree with you whole heartily [sic] on that. But I'm not sure this language for all time

prevents any discovery into the extent of what SEC's investigations are.

[BOARD COUNSEL]: I think it does. And I respectfully suggest we'd like to be able to brief that, Your Honor, if you're inclined to go that way. You know, we think this is, you know, it says "all documents and information." This is certainly information. And it's any proceeding. I do want to try to dispense with the argument my friend on the other side that this isn't comprehensive, this is in any proceeding.

THE COURT: Yeah, agree with you. I agree.

....

[BOARD COUNSEL]: But it's all information and that's information. And so I think it covers it. And I do think it should cover it because they want to use those unadorned facts of the number and timing to draw inferences about the substantive nature of the [SEC] supervision, which is exactly what the statute is trying to keep confidential.

....

THE COURT: Okay. I'm inclined to agree with [Board Counsel]. I mean, if you guys want to brief it, you can, but you're going to be wasting your time, I think. I mean, you've gotten a bunch of other things. I mean, if we get to a point where this is actually crucial to the case and the case is going to depend on this issue, I might be more open [to it]. But I mean, if [Board Counsel is] not willing to compromise, which he doesn't have to, it's his right to sort of stand on the statute language, then I don't think you have much luck here.

JA 095-97.

As the forgoing colloquy demonstrates, when it was useful as a

shield to avoid producing discovery in the district court, the Board

aggressively (and successfully) argued for the broadest conceivable interpretation of the same statutory secrecy protections it now insists are inapplicable in a "public" judicial proceeding. Although the Board's full-throated defense of those secrecy provisions was excessive at the margins in the specific discovery context at the time, the Board and the district court were plainly correct in their baseline premise that those secrecy protections did not evaporate at the courthouse doors.

### C. The Board's Interpretation Is Beside the Point

Even if the Board's current interpretation of the statute made sense, it would still fail to do the work the Board asks of it. At most, it would mean only that if the Court squints just hard enough, and tilts its head at just the right angle, it might plausibly detect a possible loophole in the obvious overall meaning of the statute. In other words, perhaps "the bubble of confidentiality" created by the statute's secrecy requirements "is not airtight," *see Doe v. MIT*, 46 F.4th 61, 75 (1st Cir. 2022), such that nobody would technically be guilty of violating the statute if Doe were forced to litigate this case in his true name. *But see* Transcript at 15 (court and Board counsel appearing to agree that the Board "would be violating the law" and "would be a felon" if it produced

12

in discovery any information relating to its investigation of Doe); *In re Sealed Case*, 237 F.3d 657, 667-68 (D.C. Cir. 2001) (Federal Election Commission violated statutory investigative confidentiality requirements by filing subpoena enforcement case on public record rather than under seal).

But even if nobody could be formally charged with violating the statute, its secrecy protections remain highly relevant to the separate question of whether pseudonymity is appropriate. This Court made that clear in the *MetLife* case, which reversed a district court decision that interpreted the statutory confidentiality provisions of the Dodd-Frank Act as a categorical displacement of the common-law right of access to judicial records, and thus as requiring the sealing and redacting of certain portions of the court record. 865 F.3d at 663. Directing the district court on remand to analyze each individual sealing and redaction request under the usual standards established by circuit precedent, this Court nevertheless emphasized that "Dodd-Frank's confidentiality provision should weigh heavily in that analysis." *Id.* at 675. Although the statute did not categorically protect the information at issue, "it does represent a congressional judgment about the importance of maintaining

13

the confidentiality of nonpublic information submitted to [the agency]."

*Id.*[6]

The First Circuit adopted the same approach in *MIT*, quoting the above passage from *MetLife* and finding it "persuasive."  46 F.4th at 76; *accord Doe v. Town of Lisbon*, 78 F.4th 38, 46-47 (1st Cir. 2023) (reaffirming *MIT* in the context of a public judicial proceeding arising from a nonpublic state administrative proceeding challenging the inclusion of the pseudonymous plaintiff's name on a list identifying police officers who have engaged in misconduct).  The *MIT* court acknowledged that the relevant statutory confidentiality text in that case likewise was "not airtight," in part because an exception applied to the circumstances at hand, but the court nevertheless rejected the university's "rose-colored glasses" argument that because of the exception, the statutory confidentiality protections should "fall by the wayside as soon as the

---

[6] As previously noted, the Dodd-Frank secrecy provisions in *MetLife* were far less "airtight" than the Sarbanes-Oxley provisions that protect secrecy in Board investigations.  Among other differences, the Dodd-Frank provisions have no express application to judicial proceedings (whereas the Sarbanes-Oxley provisions do) and expressly subject otherwise secret information to routine public disclosure under the Freedom of Information Act (whereas Sarbanes-Oxley expressly exempts Board inspection and investigative information from FOIA).

student sues the institution." *Id.* at 75. The applicable exception, the court continued, "does not defenestrate the student's privacy interests simply because he has sued the school." *Id.* Rather, those privacy interests "continue to have force," and "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 75-76. Thus, "it would be a mistake to conclude that the confidentiality attending [the underlying administrative] proceedings is unimportant simply because it is not absolute. It is evident, we think, that federal law aims to keep such proceedings largely under wraps." *Id.* at 75.[7]

So too here. As in *MetLife* and *MIT*—and as in this Court's 2001 *Sealed Case* decision involving the secrecy that shrouds Federal Election Commission investigations—Congress unquestionably and purposefully went to great lengths to protect the privacy and reputational interests of

---

[7] As in *MetLife*, the statutory confidentiality provisions in *MIT* were far less "airtight" than the Sarbanes-Oxley provisions that protect secrecy in Board investigations. Among other differences, the provisions in *MIT* did not literally prohibit educational institutions from publicly disclosing the confidential information in question. They merely said that an institution that did not keep certain information confidential would be ineligible for federal funding.

15

accountants defending against untested allegations of professional misconduct made by private citizens on the Board's staff. Whether those protections are "airtight"—and whether the Board's rose-colored glasses can glean a convoluted exception to the "background confidentiality regime"—is beside the point. The obvious policy judgment made by Congress—reinforced by the Board's own rules—remains highly relevant, if not predominant, on the question of pseudonymity.

### D. The Board's Purported Distinctions from Other Statutory and Rule-Based Secrecy Regimes Are Immaterial

The Board concedes that many different types of judicial proceedings—including those arising from grand jury proceedings and whistleblower claims—are routinely conducted, from start to finish, pseudonymously or completely under seal. Board Br. at 34-38.[8] The Board nevertheless asserts that Rule 6(e) of the Federal Rules of

---

[8] Among many other categories of cases that are often conducted without public disclosure of the real parties claiming harm—some having broad national significance—are cases litigated on behalf of a class of unidentified plaintiffs or by membership organizations with associational standing to sue on behalf their undisclosed members who claim injury. *See, e.g.*, *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022).

Criminal Procedure "differ[s] substantially" and is "nothing like" the Sarbanes-Oxley secrecy mandates for Board proceedings, in large part because the rule expressly refers to ancillary court proceedings and because, unlike grand jury secrecy, Board secrecy is not "somehow essential to the operation of the Board." Board Br. at 34-36.

The Board is wrong on both counts. Although Rule 6(e) is worded differently than Sarbanes-Oxley, the two provisions have striking similarities and purposes, and both set forth certain itemized exceptions. (Largely insignificant textual differences likely stem, at least in part, from the fact that Sarbanes-Oxley is a statute drafted by Congress and enacted through traditional bicameralism and presentment, whereas Rule 6(e) is not.) Moreover, as previously discussed, Sarbanes-Oxley *does* expressly mandate that secrecy generally extends by default to "any proceeding in any Federal or State court or administrative agency." 15 U.S.C. § 7215(b)(5)(A).

Moreover, there is no serious dispute that Congress mandated secrecy for Board proceedings not only to protect the personal privacy and professional reputations of accused accountants like Doe, but also to preserve the effectiveness of the Board's regulatory functions by assuring

17

accountants and firms they could turn over their confidential information to the Board without fear that their information would leak out to others, including court litigants. Indeed, there was near-universal agreement among the SEC, the audit profession, and the Board's predecessor entity that the predecessor entity had been ineffective due to the reluctance of audit firms to provide information for fear of that information being disclosed to litigants in federal and state court proceedings. *See generally* Andrew J. Morris, *The Sarbanes Oxley Privilege for Public Company Accounting Oversight Board Materials: Its Implications for SEC Enforcement Proceedings*, 5 HARV. BUS. L. REV. ONLINE 87, 88-91 (2015) (citing legislative history and related witness testimony and reports). "One reason for this ineffectiveness [of the Board's predecessor] … was its inability to shield its oversight process from private litigants who wanted information for lawsuits against accounting firms." *Id.* at 88; *accord* Securities and Exchange Commission, *Framework for Enhancing the Quality of Financial Information Through Improvement of Oversight of the Auditing Process*, 67 Fed. Reg. 44964, 44987 (proposed July 5, 2002) ("Those who possess information may be less forthcoming in responding to a [Board] inquiry if they believe that the information they provide will

be made public or made available to private litigants. The [Board's] efforts to improve audit quality accordingly would be hindered.").

In any event, this Court has already expressly acknowledged the obvious similarities between grand jury secrecy and the kind of statutory secrecy that applies in comparable civil regulatory contexts. For example, in its above-noted 2001 *Sealed Case* decision, the Court noted that the language, purpose, and structure of the secrecy mandates governing FEC investigations "create a strong confidentiality interest analogous to that protected by Federal Rule of Criminal Procedure 6(e)(6)." 237 F.3d at 667. That was because "[i]n both contexts, secrecy is vital to protect an innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *Id.* (cleaned up). Accordingly, in light of these obvious similarities, the Court held "there is a strong presumption that, even if the FEC possesses the power to file subpoena enforcement actions on the public record [in a public judicial proceeding], such actions should be sealed." *Id.* To reiterate, Appellant Doe has asked to seal *nothing* in this lawsuit against the Board; he merely asks that his true name be kept out of the public record, while

19

everything else about the case remains subject to full public view in the ordinary course.

The Board likewise contends that the SEC whistleblower secrecy provisions of Dodd-Frank are "markedly different" than the secrecy provisions of Sarbanes-Oxley, Board Br. at 36-38, but in fact the two provisions again bear striking resemblances to one another in language and purpose. As with grand jury secrecy, both statutes—not just Dodd-Frank—expressly extend their secrecy protections to ancillary judicial proceedings. And as noted above in connection with grand jury proceedings, both statutes were intended not only to protect the privacy and reputations of immediately affected parties but to facilitate regulatory effectiveness by assuring everyone that their privacy and reputations will not be jeopardized by providing confidential information in connection with a nonpublic regulatory proceeding.

## II.    THE BOARD'S *SEALED CASE* BOX-CHECKING IS WRONG

The Board would understandably prefer to bog the Court down in its best-of-five, wooden box-checking recitation of the *Sealed Case* factors rather than engage with Congress's deliberate policy choice to ensure the secrecy of unproven Board staff allegations against accountants like Doe.

But the Board falls short even in its box-checking exercise. The Board admits that one factor decidedly favors pseudonymity because the Board already knows Doe's identity (and much more about him)—indeed it has been secretly inspecting, investigating, and prosecuting Doe for the past several years.

The Board insists that two of the other five *Sealed Case* factors automatically weigh against pseudonymity because Doe is not a minor and does not fear retaliation. But the mere absence or inapplicability of these two factors (especially youth) should be given relatively little or no weight here, where a federal statute mandates secrecy in a context that will rarely if ever apply to a minor or threaten retaliation. Under the Board's preferred approach, the best-of-five box-checking exercise automatically converts to a must-win-three-of-four for all adult or corporate litigants—that is, for the overwhelming majority of litigants. That cannot be right.

Turning to the remaining two factors, the Board is simply wrong on both. First, Doe has strong privacy and reputational interests in avoiding the inevitable scarlet letter that attaches to even untested and unproven allegations leveled by powerful governmental or pseudo-governmental

21

law enforcement agents, particularly those who work for the primary regulator of Doe's chosen profession. Those interests are not just strong but "obvious," as this Court and others have repeatedly recognized. *E.g.*, *Citizens for Resp. & Ethics in Wash. v. DOJ*, 854 F.3d 675, 682 (D.C. Cir. 2017) (people "have an obvious privacy interest ... in keeping secret the fact that they were subjects of a law enforcement investigation" (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995))); *accord id.* at 679 (people "have a substantial privacy interest in preventing disclosure of their names in law enforcement files" (quoting *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1092 n.3 (D.C. Cir. 2014))); *Sealed Case*, 237 F.3d at 663-64 (subjects of nonpublic FEC investigation have "legally cognizable interest" in maintaining confidentiality of nonpublic FEC investigatory information because once the information is publicly released, "the cat is out of the bag" and "statutorily guaranteed confidentiality would be forever lost" (internal citation omitted)); *id.* at 666 (this privacy interest, especially when codified by applicable statute, is "extraordinarily strong," such that it will "only rarely, if ever," be outweighed by counterbalancing factors); *Mountgordon v. U.S. Coast Guard*, 691 F. Supp. 3d 72, 92-93 (D.D.C.

22

2023) (persons merely accused of misconduct have an "evident," "discernable [sic]," and "strong" privacy interest in "maintaining their confidentiality," which outweighs public interest in disclosure (citations omitted)).[9]

Indeed, the Board knows better than anyone how audit clients and audit firms would inevitably react to public disclosure that Doe stands accused of professional misconduct by the primary federal regulator of the public auditing profession. That is one of the principal reasons the Board has repeatedly urged Congress—without success—to amend Sarbanes-Oxley to allow the Board to immediately publicize its private staff's unproven allegations. *See, e.g.*, Board Press Release, "PCAOB Staff Directed to Develop Proposal to Ask Congress to Make Public

---

[9] The Board acknowledges that in *Doe v. Hill*, 141 F.4th 291 (D.C. Cir. 2025), this Court also accepted the legitimate privacy interests of the convicted-criminal plaintiff in not having his *adjudicated* felony conviction *re*publicized, yet suggests that Doe's privacy interest is somehow, "*a fortiori*," less worthy of respect because Doe has merely been *accused* of wrongdoing, and because the never-before-publicized accusations are merely civil rather than feloniously criminal. Board Br. at 21. Doe genuinely cannot fathom the Board's pretzel logic in this regard.

23

Disciplinary Hearings and Related Proceedings" (Aug. 5, 2010); [10] Claudius B. Modesti, "The Need for Transparency in PCAOB Disciplinary Proceedings" (Sept. 28, 2010) (Board's then-enforcement director supporting legislation to amend Sarbanes-Oxley, noting that Board is "virtually unique among similar regulators in that our disciplinary proceedings are required by law to be kept confidential through charging, hearings, initial decision, and even appeal" and bemoaning that this feature "denies the public access to important information"); [11] Soyoung Ho, "Enforcement Staff Supports Legislation to Make PCAOB Disciplinary Proceedings Public," Thomson Reuters (June 15, 2022).

The Board has long wanted permission to alert audit clients, their shareholders, and potential audit-firm employers of its staff's belief that an accused accountant or firm is a bad actor, and thus to *let the buyer*

---

[10] *Available at* https://pcaobus.org/news-events/news-releases/news-release-detail/pcaob-staff-directed-to-develop-proposal-to-ask-congress-to-make-public-disciplinary-hearings-and-related-proceedings_302#:~:text=PCAOB%20Staff%20Directed%20to%20Develop,hearings%20on%20matters%20regarding%20auditors.

[11] *Available at* https://pcaobus.org/news-events/speeches/speech-detail/the-need-for-transparency-in-pcaob-disciplinary-proceedings_274.

*beware.* The Board cannot now plausibly deny that such publicity would have its intended, *material* effect on a wide array personnel, hiring, and investing decisions concerning the accused accountant—perhaps even extending to decisions by banking and other financial institutions that service accounts associated with the accused accountant and are concerned about their own risk—nor that those decisions would invariably be unfavorable to the accused accountant. The Board may believe that such professional and reputation damage is worth the public benefit it thinks might be gained from early public disclosure of its staff's untested allegations, but Congress has repeatedly and unmistakably determined otherwise, and that core legislative policy judgment is entitled to substantial (if not conclusive) weight.[12]

---

[12] Moreover, apart from memorializing Doe's sworn agreement with the obvious privacy and reputational interests this Court and others have repeatedly acknowledged, what more would the Board's demand for affidavits and other evidence accomplish, especially at the pleadings stage of the litigation? Doe does not have a crystal ball, so neither he nor anyone else can credibly attest with certainty to having *personal knowledge* of the specific hypothetical harm that *would* befall him in the hypothetical event that his name prematurely became public. Insisting that Doe should or could submit admissible clairvoyant evidence to prove hypothetical consequences from hypothetical future events that have not yet occurred is plainly unreasonable and pointless.

25

The final factor—the quasi-governmental status of the Board—also tips decidedly in favor of pseudonymity. The Board appears to concede that Doe seeks only case-specific declaratory and injunctive relief, expressly limited to stopping the Board's disciplinary proceeding *against him.* Board Br. at 24. He does not seek money damages against taxpayers, certification of a class action, a nationwide injunction, or anything of that kind.

The Board nevertheless seeks to classify this case as one that threatens "far-reaching consequences" that might theoretically affect unspecified future cases. Board Br. at 23-24. The Board is saying nothing more than if Doe prevails, this case will create unfavorable precedent with which it will have to contend. But that is true with most litigated cases (and a key reason why most cases settle); indeed, that is how the system *should* work—especially when powerful governmental and quasi-governmental regulators are accused of violating civil liberties and the constitutional separation of powers. Besides, since when is pseudonymity stripped simply because a litigant seeks individualized relief that might set a precedent with broader ripple effects? Let us not forget that some of the most consequential and controversial cases in U.S.

26

history were litigated pseudonymously, all the way up through the Supreme Court. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973), *overruled by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).[13]

The Board also belittles Doe's First Amendment right to petition the government for redress of grievances. Board Br. at 28-29. Although it concedes that filing a complaint in court is a form of protected petitioning activity, the Board suggests Doe's complaint is no different in this regard than a mine-run slip-and-fall lawsuit between two neighbors, or a contract dispute between two private merchants. *Id.* But the Board overlooks the heightened, *dual-level* First Amendment interest at play when not only has a plaintiff petitioned the judicial branch for redress of a grievance by filing a complaint, but the grievance and specific relief the plaintiff seeks from the judiciary is stopping executive-branch officers

---

[13] Here too, the Board's contention in this Court is difficult to square with the positions it is simultaneously taking in the district court. There, in arguing that the district court lacks subject-matter jurisdiction over certain of Doe's constitutional claims (including the Board's deprivation of Doe's rights to due process and a jury trial in an Article III court), the Board has repeatedly insisted that Doe's claims are merely "procedural," "case-specific," and "not structural." *See, e.g.*, Board Summary Judgment Br. (ECF No. 110-1) at 1, 7, 29 (Nov. 25, 2025); Board Reply Br. (ECF No. 115) at 1-4, 6, 15 (Jan. 13, 2026).

27

from continuing their ongoing deprivations of his constitutional liberties and violations of the structural separation of powers in the process. *See, e.g.*, Note, *A Petition Clause Analysis of Suits Against the Government: Implications for Rule 11 Sanctions*, 106 HARV. L. REV. 1111, 1118 (1993) ("a lawsuit filed against the government deserves the *greatest* protection under the Petition Clause" (emphasis added) (footnotes omitted)); James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government*, 91 NW. U. L. REV. 899, 901 (1997) ("History and context confirm that the Petition Clause guarantees the right of individuals to pursue judicial remedies for *government* misconduct." (emphasis added)).

## III.   THE BOARD HAS NO ANSWER TO THE MOST BASIC QUESTION

The Board's brief is long on box-checking and uncontroverted baseline presumptions, but noticeably short on specifics as to why pseudonymity is inappropriate *in this case*. The Board openly admits that Doe's actual name is entirely irrelevant to the case, because "adjudicating Doe's claims will implicate only the Board's conduct and structure." Board Br. at 19. Most conspicuously, the Board never answers the most basic question regarding pseudonymous pleading:

Why, *in this case*—where the entire proceeding is otherwise being litigated in full public view, with full disclosure of sufficient undisputed details about Doe to ensure that he is the real human being he says he is, and where the Board already knows his name and virtually everything else about him from its yearslong investigation of him—would the court or the public have any conceivable marginal interest in squeezing out the only minute drop of information that remains undisclosed?

The Board has no answer.  (Nor did the district court.)  And, importantly, the Board is nothing like a typical defendant who might know little or nothing about its pseudonymous adversary.  The Board is a powerful federal regulator that has employed its vast inquisitorial tools to probe Doe for several years.  Were Doe not the person he says he is in his complaint—or were he a public figure (infamous or otherwise), a serially abusive litigant, a convicted criminal, a charlatan, a gadfly, or a shake-down artist, or if any other trait or fact might plausibly affect the court's or the public's perception of his bona fides as the litigant he says he is—surely the Board would already know.  But the Board has never so much as suggested that this is the case.  Nor, despite the three-year pendency of this lawsuit—including extensive unredacted briefing of

29

cross-motions for summary judgment—has the Board reported a single media outlet, or any random member of the public, that has even casually inquired about Doe's true name, much less claimed any genuine interest in knowing it or, as frequently happens in litigation of genuine public interest, sought formal intervention to find out.

With no conceivable *actual* public interest weighing against Doe's strong statutory, privacy, and reputational interests in litigating pseudonymously, even the starting-point *Sealed Case* factors tip almost entirely in Doe's favor.

## CONCLUSION

The district court's August 2, 2024 Memorandum Opinion and Order denying Appellant Doe leave to litigate his case pseudonymously should be reversed.

Dated:  March 23, 2026

Ian D. Roffman
Melanie V. Woodward
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA  02210
(617) 439-2421
iroffman@nutter.com

Respectfully submitted,

s/ *Russell G. Ryan*

Russell G. Ryan
(*Counsel of Record*)
(D.C. Cir. Bar No. 42101)
Casey Norman
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

*Counsel for Plaintiff-Appellant*
*John Doe*

31

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains fewer than 6,500 words. This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

March 23, 2026                    /s/ *Russell G. Ryan*
                                  Russell G. Ryan

                                  *Counsel for Plaintiff-Appellant*
                                  *John Doe*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I electronically filed the foregoing brief with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Russell G. Ryan*
Russell G. Ryan

*Counsel for Plaintiff-Appellant*
*John Doe*