# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 24-5195** **September Term, 2025**

FILED ON: JUNE 9, 2026

JOHN DOE,
APPELLANT

v.

PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD AND UNITED STATES OF AMERICA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cv-00780)

Before: HENDERSON, WALKER, and GARCIA, *Circuit Judges*

## JUDGMENT

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs of the parties. *See* D.C. CIR. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the district court's order be **AFFIRMED**.

* * *

Plaintiff John Doe—an accountant facing disciplinary proceedings before the Public Company Accounting Oversight Board—brought suit in district court, raising wide-ranging challenges to the Board's structure and operations. As part of that action, Doe sought leave to proceed under a pseudonym. The district court denied the motion. We affirm.

## I

Congress "established" the Board "to oversee the audit of companies that are subject to the securities laws." 15 U.S.C. § 7211(a). "Every accounting firm—both foreign and domestic—that participates in auditing public companies under the securities laws must register with the Board, pay it an annual fee, and comply with its rules and oversight." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 485 (2010). The Board promulgates accounting standards, initiates

investigations, conducts disciplinary adjudications, and issues sanctions. *See id.* But the Board is not a typical agency: Although it is "Government-created" and subject to "the SEC's oversight," the Board is organized as a private nonprofit corporation. *Id.* at 484–86.

Doe is an accountant who worked for a firm registered with the Board. In the late 2010s, the Board began an investigation of the firm. The Board contacted Doe and demanded that he "cooperate" with the investigation or risk "disciplinary proceedings against him." Compl. ¶ 54. Doe refused, and in December 2022 the Board initiated the promised disciplinary proceedings, which remain ongoing.

In January 2023, Doe filed suit in the Northern District of Texas, raising constitutional challenges related to the Board's funding scheme, the appointments of and removal protections for its officers, and its adjudicative system. Doe requested an injunction prohibiting the Board from continuing the proceedings against him and a declaration that those proceedings are unlawful. Alongside his complaint, Doe moved for leave to litigate under a pseudonym.

The district court in Texas found that it lacked personal jurisdiction and accordingly transferred Doe's case to the District of Columbia. Doe then renewed his motion to proceed under a pseudonym, which the district court below denied. Doe timely appealed.

**II**

We have jurisdiction to review "an order denying a motion to proceed anonymously" under the collateral order doctrine. *In re Sealed Case*, 931 F.3d 92, 95 (D.C. Cir. 2019) (*Sealed Case I*). "[W]e review de novo the criteria used by a district court to decide whether to grant" such a motion, and "we review a court's application of those criteria only for an abuse of discretion." *Id.* at 96. "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996). If legal questions arise in our review of a district court's exercise of discretion, we "need not defer to the district court's resolution of" them. *Id.*

When a party moves to proceed under a pseudonym, the district court must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *Sealed Case I*, 931 F.3d at 96. There is a "strong presumption against pseudonymous litigation," *Doe v. Hill*, 141 F.4th 291, 292 (D.C. Cir. 2025), so "[t]he moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name," *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (*Sealed Case II*). A district court "ought to begin" the pseudonymity inquiry by looking to five non-exhaustive factors: (1) "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature"; (2) "whether identification poses a risk of retaliatory physical or mental harm"; (3) "the ages of the persons whose privacy interests are sought to be protected"; (4) "whether the action is against a governmental or private party"; and (5) "the risk of unfairness to the opposing party." *Sealed Case I*, 931 F.3d at 97.

**A**

Doe first argues that the district court abused its discretion in applying the standard five-factor test. We disagree.

The first factor considers "the strength and sensitivity of the privacy interests at stake." *Hill*, 141 F.4th at 293. Doe asserts a privacy interest in the fact that he is the subject of a Board disciplinary proceeding because disclosure of that fact would harm his professional reputation by "brand[ing] him an outlier—'damaged goods'—among accounting professionals." Appellant's Brief 32. Doe's privacy concerns are different in kind from those that "traditionally warrant pseudonymity," which typically involve "'intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors.'" *Hill*, 141 F.4th at 296 (quoting *Sealed Case II*, 971 F.3d at 327). The district court still treated Doe's privacy concerns as "relevant to the first factor," but found that this factor weighs against Doe because he had failed to substantiate those concerns. *Doe v. Pub. Co. Acct. Oversight Bd.*, 2024 WL 3954189, at *2 (D.D.C. Aug. 2, 2024). As the district court explained, Doe relied only on general statements about the potential harms of public charges, and he did not submit any declarations to support those claims. *Id.* The district court's approach is consistent with our precedents, which underscore that movants must make a "colorable showing of injury to a privacy interest" by offering something "concrete to establish that revealing [their] identity would cause" some "cognizable harm." *Sealed Case II*, 971 F.3d at 327. That showing could take the form, for instance, of a declaration explaining the "substantial risk" that a "privacy injury" "*would* occur." *Id.* The district court reasonably concluded that Doe's motion was insufficient on this front, as Doe "merely asserted" he would suffer a privacy injury without "specifically explain[ing] why harm was likely to result." *Doe*, 2024 WL 3954189, at *2; *see also id.* (describing Doe's motion as "wanting" compared to successful pseudonym motions).

The second and third factors focus on "the risk of retaliation against a named plaintiff" and "the sensitivity of the party's age," respectively. *Hill*, 141 F.4th at 293. Doe concedes that neither factor weighs in his favor. Still, he argues that the district court abused its discretion by stating that these factors "add further weight to the scale supporting disclosure," *Doe*, 2024 WL 3954189, at *3, instead of treating the factors as neutral. *See* Appellant's Brief 27–28. As we have previously noted, there is "no support in this court's case law" for the proposition "that only those factors that support a party's request should be considered." *Doe Corp. 1 v. Inter-Am. Dev. Bank*, 2025 WL 3485682, at *1 (D.C. Cir. Dec. 4, 2025) (per curiam). In any event, in the very next sentence the district court explained that whether it viewed these factors as "inapplicable" or "weighing in favor of disclosure" made no material difference; either way, these factors rendered Doe's motion "less compelling." *Doe*, 2024 WL 3954189, at *3 (cleaned up). We see no basis to question that analysis.

The fourth factor "looks to the identity of the opposing party"—whether the defendant is a private or governmental actor—"as a tool for measuring the public interest in transparent litigation." *Hill*, 141 F.4th at 298. Both sides agree that the Board should be considered a governmental actor for purposes of the pseudonymity analysis, and the district court in turn found this factor to cut against Doe because the presence of a governmental defendant "favor[s] pseudonymity only when plaintiffs request individualized relief." *Doe*, 2024 WL 3954189, at *3.

Doe contends that he seeks only "modest, individualized, and self-protective relief" because he requests an injunction preventing the Board from proceeding against him. Appellant's Brief 36. The district court correctly explained, however, that Doe's arguments would clearly apply beyond this case: Doe raises sweeping challenges to the Board's operations and existence that are "not grounded in his specific circumstances." *Doe*, 2024 WL 3954189, at *3. As we explained in *Sealed Case II*, pseudonymity is less likely to be appropriate where "the party asking to proceed anonymously seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward." 971 F.3d at 329. The district court therefore did not err in finding that the public interest in this case is significant and weighs against pseudonymity.[1]

The fifth factor considers "the risk of unfairness to the opposing party." *Hill*, 141 F.4th at 293. The Board concedes that this factor supports Doe because the Board is already aware of Doe's identity. But that alone does not justify pseudonymity, so the district court did not abuse its discretion in finding that, on balance, the standard five factors do not justify granting Doe's motion. *See Sealed Case II*, 971 F.3d at 326 n.1 (denying pseudonymity motion even though the governmental defendant was "aware of the [plaintiff's] identity").

**B**

Next, Doe argues that the district court erred in declining to weigh his likelihood of success on the merits in the pseudonymity analysis. Appellant's Brief 43–44. The district court rejected that argument. *Doe*, 2024 WL 3954189, at *5. So do we. Our published opinions on the subject have never suggested that merits questions are relevant to the pseudonymity issue. Privacy concerns—not the underlying merits—drive the pseudonymity analysis, and requiring courts to delve into the merits to resolve a pseudonymity motion would be exceedingly burdensome.

**C**

Finally, Doe points to provisions of the Board's organic statute that, in his view, guarantee the confidentiality of Board investigations and disciplinary proceedings. On Doe's theory, those provisions "weigh heavily in favor" of pseudonymity because they reflect a congressional judgment that the subjects of Board adjudications face "irreparable reputational and career damage" if their identities are publicly disclosed. Appellant's Brief 21; *see Doe v. MIT*, 46 F.4th 61, 71 (1st Cir. 2022) (observing that pseudonymity is "ordinarily" appropriate in "suits that are bound up with a prior proceeding made confidential by law").

Several provisions of 15 U.S.C. § 7215—which governs Board investigations and adjudications—address confidentiality. Section 7215(c)(2) provides that "[h]earings under this

[1] Also under the fourth factor, Doe argues that pseudonymity is proper because disclosure of his identity could "chill or discourage people from exercising their core First Amendment rights" to challenge government actions in court. Appellant's Brief 41. The district court reasonably rejected that argument, as it would "make just about any plaintiff entitled to pseudonym status." *Doe*, 2024 WL 3954189, at *3 (internal quotation marks omitted). We have similarly not been swayed by suggestions that the fourth factor should favor pseudonymity where disclosure could "chill litigants from suing the government for constitutional violations." *Hill*, 141 F.4th at 300.

section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing." Section 7215(b)(5)(A) further directs that

> all documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with . . . an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under [FOIA], or otherwise, unless and until presented in connection with a public proceeding or released in accordance with subsection (c).

Last, Section 7215(d)(1) explains that if the Board "imposes a disciplinary sanction," it "shall report the sanction to" "the public."[2]

We conclude, however, that these provisions do not cover the identities of subjects of Board proceedings but instead the documents and information generated in the Board's investigations and the contents of Board hearings. As noted, Section 7215(c)(2) makes Board "[h]earings" presumptively confidential, while Section 7215(b)(5)(A) extends confidentiality protections to certain "documents and information." It is hardly natural to regard a person's name and the fact of a Board proceeding against him as "documents and information prepared or received by or specifically for the Board." And although in the abstract a name might fall within the "dictionary definition" of "information," "the context"—Section 7215(b)(5)(A)'s focus on information "prepared or received by" the Board "in connection with . . . an investigation"—"tugs strongly in favor of a narrower reading." *Yates v. United States*, 574 U.S. 528, 539 (2015) (plurality opinion). The title of Section 7215(b)(5)—"Use of documents"—also fits that narrower reading. And our conclusion is reinforced by the contrast between Section 7215(b)(5)(A) and other statutory confidentiality protections—such as those in the SEC whistleblower scheme, which Doe suggests is analogous—that explicitly refer to protecting individual identities. *See* 15 U.S.C. § 78u-6(h)(2)(A) (providing that "the Commission shall not disclose any information . . . which could reasonably be expected to reveal the identity of a whistleblower"); *see also John Doe Corp. v. Pub. Co. Acct. Oversight Bd.*, 2024 WL 5275034, at *2 (S.D. Tex. June 10, 2024) (reasoning that Section 7215(b)(5)(A) does not "cover[] the identity of a company suing the [Board] over unhappiness with a [Board] investigation," but rather "documents and information prepared or received by or for the [Board] in connection with an investigation").

The text and context of Section 7215 thus demonstrate that parties like Doe do not enjoy a statutory right to pseudonymity. Because we conclude that Section 7215(b)(5)(A)'s confidentiality protection was not triggered in the first place, we need not resolve the parties' debate over whether an exception to that protection applies.

* * *

[2] If the target of a Board proceeding seeks SEC review, the sanction is automatically stayed, so there is no public disclosure of the sanction unless and until the SEC affirms the Board's decision. *See* 15 U.S.C. § 7215(d)(1)(C), (e)(1).

For the foregoing reasons, the district court's order is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk